### STATE RAILROAD TAX CASES.

TAYLOR, COLLECTOR, ET AL., *v.* SECOR ET AL.

MILLER, COLLECTOR, ET AL., *v.* JESSUP ET AL.

MILLER, COLLECTOR, ET AL., *v.* KIDDER ET AL.

1. While this court does not lay down any absolute rule limiting the powers of a court of equity in restraining the collection of taxes, it declares that it is essential that every case be brought within some of the recognized rules of equity jurisdiction, and that neither illegality or irregularity in the proceed-

ings, nor error or excess in the valuation, nor the hardship or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after the payment of the tax, will authorize an injunction against its collection.

2. This rule is founded on the principle that the levy of taxes is a legislative and not a judicial function, and the court can neither make nor cause to be made a new assessment if the one complained of be erroneous, and also in the necessity that the taxes, without which the State could not exist, should be regularly and promptly paid into its treasury.

3. *Quære:* Whether the same rigid rule against equitable relief would apply to taxes levied solely by municipal corporations for corporate purposes as that here applied to State taxes. Probably not.

4. No injunction, preliminary or final, can be granted to stay collection of taxes until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavits, have been paid or tendered without demanding a receipt in full.

5. While the Constitution of Illinois requires taxation, in general, to be uniform and equal, it declares, in express terms, that a large class of persons engaged in special pursuits, among whom are persons or corporations owning franchises and privileges, may be taxed as the legislature shall determine, by a general law, *uniform as to the class upon which it operates;* and under this provision a statute is not unconstitutional which prescribes a different rule of taxation for railroad companies from that for individuals.

6. Nor does it violate any provision of the Constitution of the United States.

7. The capital stock, franchises, and all the real and personal property of corporations, are justly liable to taxation; and a rule which ascertains the value of all this, by ascertaining the cash value of the funded debt and of the shares of the capital stock as the basis of assessment, is probably as fair as any other.

8. Deducting from this the assessed value of all the tangible real and personal property, which is also taxed, leaves the real value of the capital stock and franchise subject to taxation as justly as any other mode, all modes being more or less imperfect.

9. It is neither in conflict with the Constitution of Illinois, nor inequitable, that the entire taxable property of the railroad company should be ascertained by the State board of equalization, and that the state, county, and city taxes should be collected within each municipality on this assessment, in the proportion which the length of the road within such municipality bears to the whole length of the road within the State.

10. The action of the board of equalization, in increasing the assessed value of the property of a railroad company or an individual above the return made to the board, does not require a notice to the party to make it valid; and the courts cannot substitute their judgment as to such valuation for that of the board.

11. The Supreme Court of the State of Illinois having decided that the law complained of in these cases is valid under her constitution, and having construed the statute, this court adopts the decision of that court as a rule to be followed in the Federal courts.

APPEALS from the Circuit Court of the United States for the Northern District of Illinois.

These were bills of injunction to restrain the collection of taxes assessed on certain railroads in the State of Illinois, and, as they raised the same questions of law, were heard together. The complainants in the first-mentioned case are trustees and mortgagees of the Toledo, Peoria, and Warsaw Railroad Company; in the second, stockholders in the Chicago and Alton Railroad Company; and in the third, stockholders in the Chicago, Burlington, and Quincy Railroad Company.

To a proper understanding of the questions raised, reference is necessary to the following provisions of the constitution and statutes of the State of Illinois.

Sects. 1, 6, 9, and 10 of art. 9, and sect. 10 of art. 11, of the constitution, declare : —

"ART. 9, SECT. 1. The general assembly shall provide such rev enue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property, — such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise ; but the general assembly shall have power to tax pedlers, auctioneers, brokers, hawkers, merchants, commission-merchants, showmen, jugglers, inn-keepers, grocery-keepers, liquor-dealers, toll-bridges, ferries, insurance, telegraph, and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates."

"SECT. 6. The general assembly shall have no power to release or discharge any county, city, township, town, or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes ; nor shall commutation for such taxes be authorized in any form whatever."

"SECT. 9. The general assembly may vest the corporate authorities of cities, towns, and villages, with power to make local improvements by special assessment or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

"Sect. 10. The general assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

"Art. 11, sect. 10. The *rolling-stock* and all other movable property belonging to any railroad company or corporation in this State shall be considered personal property."

" An Act for the assessment of property and for the collection of taxes," approved March 30, 1872, in force July 1, 1872, among other provisions contains the following : —

" Sect. 3. Personal property shall be valued as follows : —

"*First,* All personal property, except as herein otherwise directed, shall be valued at its fair cash value.

" *Second,* Every credit, for a sum certain, payable either in money or labor, shall be valued at a fair cash value for the sum so payable ; if for any article of property, or for labor, or services of any kind, it shall be valued at the current price of such property, labor, or service.

" *Third,* Annuities and royalties shall be valued at their then present total value.

" *Fourth,* The capital stock of all companies and associations, now or hereafter created under the laws of this State, shall be so valued by the State board of equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association.   Said board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just ; and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, subject, however, to such change, alteration, or amendment as may be found, from time to time, to be necessary by said board : *Provided,* that, in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of any such company or association shall not be assessed or taxed in this State.   This clause shall not apply to the capital stock, or shares of capital stock, of banks organized under the general banking laws of this State."

" SECT. 6. Personal property shall be listed in the manner following :—

.   .   .   .   .   .   .   .   .   .   .   .   .

" *Eighth,* The property of a body politic or corporate, by the president, or proper agent or officer thereof."

" SECT. 7. Personal property, except such as is required in this act to be listed and assessed otherwise, shall be listed and assessed in the county, town, city, village, or district where the owner resides. The capital stock and franchises of corporations and persons, except as may be otherwise provided, shall be listed and taxed in the county, town, district, city, or village where the principal office or place of business of such corporation or person is located in this State."

" SECT. 26. Whenever the assessor shall be of opinion that the person listing property for himself, or for any other person, company, or corporation, has not made a full, fair, and complete schedule of such property, he may examine such person under oath in regard to the amount of property he is required to schedule ; and for that purpose he is authorized to administer oaths : and if such person shall refuse to answer under oath, and a full discovery make, the assessor may list the property of such person, or his principal, according to his best judgment and information."

" SECT. 40. Every person, company, or corporation, owning, operating, or constructing a railroad in this State, shall return sworn lists or schedules of the taxable property of such railroad, as hereinafter provided. Such property shall be listed and assessed with reference to the amount, kind, and value on the first day of May of the year in which it is listed."

" SECT. 41. They shall, in the month of May of the year eighteen hundred and seventy-three, and at the same time in each year thereafter, when required, make out and file with the county-clerks of the respective counties in which the railroad may be located, a statement or schedule showing the property held for right of way, and the length of the main and all side and second tracks and turnouts in such county, and in each city, town, and village in the county, through or into which the road may run, and describing each tract of land, other than a city, town, or village lot, through which the road may run, in accordance with the United States surveys, giving the width and length of the strip of land held in each tract, and the number of acres thereof. They shall also state the value of improvements and stations located on the right of way. New companies shall make such statement in May next after the

location of their roads. When such statement shall have been once made, it shall not be necessary to report the description as herein-before required, unless directed so to do by the county board; but the company shall, during the month of May, annually, report the value of such property by the description set forth in the next section of this act, and note all additions or changes in such right of way as shall have occurred.

" SECT. 42. Such right of way, including the superstructures of main, side, or second tracks and turnouts, and the stations and im-provements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued; and shall be described in the assessment thereof as a strip of land extending on each side of such railroad track, and embracing the same, together with all the stations and improvements thereon, com-mencing at a point where such railroad track crosses the boundary line in entering the county, city, town, or village, and extending to the point where such track crosses the boundary line leaving such county, city, town, or village, or to the point of termination in the same, as the case may be, containing —— acres, more or less (inserting name of county, township, city, town, or village, boundary line of same, and number of acres, and length in feet) ; and, when advertised or sold for taxes, no other description shall be necessary.

" SECT. 43. The value of the 'railroad track' shall be listed and taxed in the several counties, towns, villages, districts, and cities in the proportion that the length of the main track in such county, town, village, district, or city bears to the whole length of the road in this State, except the value of the side or second track, and all turnouts, and all station-houses, dépôts, machine-shops, or other buildings belonging to the road, which shall be taxed in the county, town, village, district, or city in which the same are located.

" SECT. 44. The movable property belonging to a railroad com-pany shall be held to be personal property, and denominated, for the purpose of taxation, 'rolling-stock.' Every person, company, or corporation, owning, constructing, or operating a railroad in this State, shall, in the month of May, annually, return a list or sched-ule, which shall contain a correct detailed inventory of all the rolling-stock belonging to such company, and which shall dis-tinctly set forth the number of locomotives of all classes, pas-senger cars of all classes, sleeping and dining cars, express cars,

baggage cars, house cars, cattle cars, coal cars, platform cars, wrecking cars, pay cars, hand cars, and all other kinds of cars.

"SECT. 45. The rolling-stock shall be listed and taxed in the several counties, towns, villages, districts, and cities, in the proportion that the length of the main track, used or operated in such county, town, village, district, or city, bears to the whole length of the road used or operated by such person, company, or corporation, whether owned or leased by him or them, in whole or in part. Said list or schedule shall set forth the number of miles of main track on which said rolling-stock is used in the State of Illinois, and the number of miles of main track on which said rolling-stock is used elsewhere.

"SECT. 46. The tools and materials for repairs, and all other personal property of any railroad, except 'rolling-stock,' shall be listed and assessed in the county, town, village, district, or city wherever the same may be on the first day of May. All real estate, including the stations and other buildings and structures thereon, other than that denominated 'railroad track,' belonging to any railroad, shall be listed as lands, or lots, as the case may be, in the county, town, village, district, or city where the same are located.

"SECT. 47. The county-clerk shall return to the assessor of the town or district, as the case may require, a copy of the schedule or list of the real estate (other than 'railroad track'), and of the personal property (except 'rolling-stock'), pertaining to the railroad; and such real and personal property shall be assessed by the assessor. Such property shall be treated in all respects, in regard to assessment and equalization, the same as other similar property belonging to individuals; except that it shall be treated as property belonging to railroads, under the terms 'lands,' 'lots,' and 'personal property.'

"SECT. 48. At the same time that the lists or schedules are hereinbefore required to be returned to the county-clerks, the person, company, or corporation, running, operating, or constructing any railroad in this State, shall return to the auditor of public accounts sworn statements or schedules, as follows:—

"*First*, Of the property denominated 'railroad track,' giving the length of the main and side or second tracks and turnouts, and showing the proportions in each county, and the total in the State.

"*Second*, The 'rolling-stock,' giving the length of the main track in each county, the total in this State, and the entire length of the road.

"*Third*, Showing the number of ties in track per mile, the

weight of iron or steel per yard, used in main and side tracks; what joints or chairs are used in track; the ballasting of road, whether gravelled or dirt; the number and quality of buildings or other structures on 'railroad track;' the length of time iron in track has been used, and the length of time the road has been built.

"*Fourth*, A statement or schedule showing, —

" 1. The amount of capital stock authorized, and the number of shares into which such capital stock is divided.

" 2. The amount of capital stock paid up.

" 3. The market value, or, if no market value, then the actual value, of the shares of stock.

" 4. The total amount of all indebtedness, except for current expenses for operating the road.

" 5. The total listed valuation of all its tangible property in this State.

" Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the auditor of public accounts.

" SECT. 49. If any person, company, or corporation, owning, operating, or constructing any railroad, shall neglect to return to the county-clerks the statements or schedules required to be returned to them, the property so to be returned and assessed by the assessor shall be listed and assessed as other property. In case of failure to make returns to the auditor, as hereinbefore provided, the auditor, with the assistance of the county-clerks and assessors, when he shall require such assistance, shall ascertain the necessary facts, and lay the same before the State board of equalization. In case of failure to make said statements, either to the county-clerk or auditor, such corporation, company, or person shall forfeit, as a penalty, not less than one thousand nor more than ten thousand dollars for each offence, to be recovered in any proper form of action, in the name of the 'People of the State of Illinois,' and paid into the State treasury.

" SECT. 50. The auditor shall annually, on the meeting of the State board of equalization, lay before said board the statements and schedules herein required to be returned to him; and said board shall assess such property in the manner hereinafter provided.

" SECT. 51. The county-clerk shall procure, at the expense of the county, a record-book, properly ruled and headed, in which to enter the railroad property of all kinds, as listed for taxation, and shall enter the valuations as assessed, corrected, and equalized, in the manner provided by this act; and against such assessed, corrected, or equalized valuation, as the case may require, the county-clerk

shall extend all the taxes thereon, for which said property is liable; and, at the proper time fixed by this act for delivering tax-books to the county collector, the clerk shall attach a warrant, under his seal of office, and deliver said book to the county collector, upon which the said county collector is hereby required to collect the taxes therein charged against railroad property, and pay over and account for the same in the manner provided in other cases. Said book shall be returned by the collector, and be filed in the office of the county-clerk for future use."

"SECT. 78. The assessor or his deputy shall . . . call at the office, place of ·doing business, or residence of each person required by this act to list property, and list his name, and shall require such person to make a correct statement of his taxable property in accordance with the provisions of this act; and the person listing the property shall enter a true and correct statement of such property, in the form prescribed by this act, which shall be signed and sworn to, to the extent required by this act, by the person listing the property, and delivered to the assessor; and the assessor shall thereupon assess the value of such property, and enter the same in his books.

"SECT. 79. If any person required by this act to list property shall be sick or absent when the assessor calls for a list of his property, the assessor shall leave at the office, or usual place of residence or business of such person, a written or printed notice requiring such person to make out and leave at the place named therein the statement or schedule required by this act. The date of leaving such notice, and the name of the person required to list the property, shall be carefully noted by the assessor in a book to be kept for that purpose."

"SECT. 82. When the personal property of any person is assessable in several school districts, the amount in each shall be assessed separately, and the name of the owner placed opposite each amount."

"SECT. 86. In counties under township organization, the assessor, clerk, and supervisor of the town, shall meet on the fourth Monday of June, for the purpose of reviewing the assessment of property in such town. And on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment, and correct the same as shall appear to them just. No complaint that another is assessed too low shall be acted upon until the person so assessed, or his agent, shall be notified of such complaint, if a resident of the county."

" SECT. 97. The county board, at a meeting to be held for the purpose contemplated in this section, on the second Monday in July, annually, after the return of the assessment-books, shall, —

.    .    .    .    .    .    .    .    .    .    .

" 2. On the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment and correct the same as shall appear to be just. No complaint that another is assessed too low shall be acted upon until the person so assessed, or his agent, shall be notified of such complaint, if a resident of the county.

.    .    .    .    .    .    .    .    .    .    .

" 4. . . . If the county board of any county shall find the aggregate assessment of the county is too high or too low, or is generally so unequal as to render it impracticable to equalize such assessment fairly, they may set aside the assessment of the whole county, or of any township or townships therein, and order a new assessment, with instructions to the assessors to increase or diminish the aggregate assessment of such county or township, as the case may be, by such an amount as said board may deem right and just in the premises, and consistent with this act."

" SECT. 100. The State board of equalization shall, at the expiration of the term of office of the members now forming said board, consist of one member from each congressional district in the State, elected as hereinafter provided, and the auditor of public accounts.

" SECT. 101. The qualified electors of each congressional district shall, at the general election in November, 1872, and every four years thereafter, elect one of their number to serve as a member of said board of equalization, who shall hold his office for four years, and until his successor is elected and qualified."

" SECT. 105. Said board shall assemble at the State capital on the second Tuesday in the month of August, annually, and examine the abstracts of property assessed for taxation in the several counties of this State, as returned to the auditor, and shall equalize the assessments as hereinafter provided; but said board shall not reduce the aggregate assessed valuation in the State; neither shall it increase said aggregate valuation, except in such an amount as may be reasonably necessary to a just equalization, and not exceeding one per cent on such aggregate assessed valuation; but this rule shall not apply to railroad property.

" SECT. 106. Said board, in equalizing the valuation of property as listed and assessed in the different counties, shall consider the

following classes of property separately: viz., personal property; railroad and telegraph property; lands, and town and city lots; and, upon such consideration, determine such rates of addition to or deduction from the listed or assessed valuation of each of said classes of property in each county, or to or from the aggregate assessed value of each of said classes in the State, as may be deemed by the board to be equitable and just, — such rates being in all cases even and not fractional; and such rates, as finally determined by said board, shall not be combined."

"SECT. 108. The State board of equalization shall assess the capital stock of each company or association, respectively, now or hereafter incorporated under the laws of this State, in the manner hereinbefore in this act provided. The respective assessments so made (other than of the capital stock of railroad and telegraph companies) shall be certified by the auditor, under direction of said board, to the county-clerk of the respective counties in which such companies or associations are located; and said clerk shall extend the taxes for all purposes on the respective amounts so certified the same as may be levied on the other property in such towns, districts, villages, or cities in which such companies or associations are located.

"SECT. 109. Said board shall also assess the railroad property denominated in this act as 'railroad track' and 'rolling-stock;' and said board is hereby given the power and authority, by committee or otherwise, to examine persons and papers. The amount so determined and assessed shall be certified by the auditor to the county-clerks of the proper counties. The county-clerk shall, in like manner, distribute the value, so certified to him by the auditor, to the county and to the several towns, districts, villages, and cities in his county entitled to a proportionate value of such 'railroad track' and 'rolling-stock.' And said clerk shall extend taxes against such values, the same as against other property in such towns, districts, villages, and cities.

"SECT. 110. The aggregate amount of capital stock of railroad or telegraph companies assessed by said board shall be distributed proportionately by said board to the several counties in like manner that the property of railroads denominated 'railroad track' is distributed. The amount so determined shall be certified by the auditor to the county-clerks of the proper counties. The county-clerk shall, in like manner, distribute the value, so certified to him by the auditor, to the county and to the several towns, districts, villages, and cities in his county entitled to proportionate value of such capital stock. And said clerk shall extend taxes

against such values the same as against other property in such towns, districts, villages, and cities."

"SECT. 114. When said board shall have completed its equalization of assessments for any year, the chairman and secretary shall certify to the auditor the rates finally determined by said board to be added to or deducted from the listed or assessed valuation of each class of property in the several counties, and also the amounts assessed by said board; and it shall be the duty of said auditor, under his seal of office, to report the action of the board to the several county-clerks, immediately after the adjournment of said board."

"SECT. 126. Said clerks shall extend the rates of addition or deduction ordered by the county board and State board of equalization, in the several columns provided for that purpose. The rate per cent ordered by the State board of equalization shall be extended on the assessed valuation of property, as corrected and equalized by the county board; except that, in the case of railroad property denominated 'railroad track' and 'rolling-stock,' said rates shall be extended on the listed valuations of such designated property." Rev. Stat. of Illinois, 1874, p. 857 et seq.

The State board of equalization, for the purpose of ascertaining the fair cash value of the capital stock and franchises of corporations in excess of the value of their tangible property, adopted the following rules: —

"WHEREAS, the fourth clause of sect. 3 of 'An Act for the assessment of property, and for the levy and collection of taxes,' approved March 30, 1872, in force July 1, 1872, provides as follows: —

"'SECT. 3. . . . *Fourth*, The capital stock of all companies and associations now or hereafter created under the laws of this State shall be so valued by the State board of equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association. Said board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just; and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding, and of the same effect, as if contained in this act, subject, however, to such change, alteration, or amendment as may be found, from time to time, to be necessary by said board: *Provided*, that in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of any such com-

pany or association shall not be assessed or taxed in this State. This clause shall not apply to the capital stock or shares of capital stock of banks organized under the general banking laws of this State'; therefore be it

"*Resolved*, That for the purpose of ascertaining the fair cash value of the capital stock, including the franchise, of all companies and associations now or hereafter created under the laws of this State, and for the assessment of the same, or so much thereof as may be found to be in excess of the assessed or equalized value of the tangible property of such companies and associations, respectively, we, the State board of equalization, hereby adopt the following rules and principles, viz. : —

" *First*, The market or fair cash value of the shares of capital stock, and the market or fair cash value of the debt (excluding from such debt the indebtedness for current expenses), shall be combined or added together; and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchise, respectively, of such companies and associations.

"*Second*, From the aggregate amount ascertained as aforesaid there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property, respectively, of such companies and associations (such equalized or assessed valuation being taken, in each case, as the same may be determined by the equalization or assessment of property by this board); and the amount remaining, in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise, which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this State."

The bill, in the first-mentioned case, alleges that the Toledo, Peoria, and Warsaw Railroad Company returned to the clerks of the respective counties in which said railroad was located, and to the auditor, sworn lists or schedules of all its property, as required by law; that after said schedules were filed with the respective county-clerks, the town and county assessors, without authority of law and without notice to the company, made additions to the schedules of property returned by it. That the respective county boards of equalization made further additions, and caused equalized assessments, made by them, to

be returned to the respective county-clerks, who certified an abstract thereof to the auditor; that said returns were by the auditor laid before the State board of equalization; that said State board added to and deducted from the assessed valuations of personal property and lands, returned to said auditor, without making any re-assessment of said property; that the only reason for making said additions and deductions was to equalize the assessed value of said property with the assessed value of the same class of property in other counties, which valuation so made without regard to the value of such property separately from the class in which the same was placed is charged to be in violation of the State constitution; that the value of said "railroad track," as returned to the county clerks and auditor, was $648,436.41, which was distributed to the several counties in which said railroad track is located, according to the value of the same in each of said counties; that the State board of equalization assessed the value of said "railroad track" at $1,629,556, and pretended to distribute the same to the several counties, without regard to the actual value of said property in said several counties, but according to the length of the track in the same; but, in fact, distributed the said sum neither according to the actual value in the several counties, nor according to the length of the main track in the same; that the value per mile of the right of way, iron and steel rails, bridging, &c., is different in different counties, and that by reason of the distribution of the assessed value of said railroad track as made by the said State board, said railway company is liable to be taxed in one county on property owned in another; that the taxes in different counties, towns, &c., are widely different, and cannot be made on an assessment as made by the State board, so as to be uniform as to property within the jurisdiction imposing the same, as required by the State constitution; that the aggregate listed value of the rolling-stock as returned to the auditor was $388,039, and the aggregate value of same as assessed by State board of equalization was $1,000,110, distributed among the several counties on the mileage principle; that the bonded debt of said railway company on the 1st of May, 1873, was $7,184,719.37; that said board of equalization assessed said railway company the sum

of $2,003,415 as and for the value of its capital stock, including its franchise over and above the assessed value of its tangible property, and distributed the same to the several counties on the mileage principle; that said board of equalization, in ascertaining the value of said capital stock and franchise, included the debt of said railway company, in accordance with the rule adopted by said board; that all of said pretended equalizations of tangible property, and assessments by said State board of equalization, were made without notice to said railway company; that the general assembly of the State could not delegate its authority to prescribe a rule uniform in operation for the taxation of franchises to the State board of equalization in the manner provided by the statute, nor provide for the election of persons to ascertain the value of the property of one class of persons, and elect or appoint other persons to ascertain the value of the property of other classes of persons; that said act allowed the equalization to be made by vote of a minority of the members of said board, and in these respects is in violation of the State constitution; that said franchise was not assessed apart from the capital stock, but is so intermingled therewith that the same cannot be separated, which makes the entire assessment void; that the capital stock and capital of a corporation are distinct and different; that the capital stock belongs to the stockholders, and cannot be assessed against the corporation, but said act requires not only the capital of corporations to be assessed, but their capital stock to be assessed to the corporation in addition thereto, and that the distribution of the amount required to be assessed for capital stock, as required by said act, is in violation of the constitution requiring county, city, &c., taxes to be uniform within the jurisdiction of the body imposing the same. The bill further alleges that such proceedings have taken place; that the collectors of the various counties are threatening to collect the taxes assessed against said railway company as aforesaid; that the capital stock of said railway company on the first day of May, 1873, was worthless; that the complainants are willing to pay so much of said taxes as have been legally assessed against said company, but they are unable to ascertain such amount; that they are trustees for the holders of certain bonds

mentioned in a deed of trust or mortgage given by said Toledo, Peoria, and Warsaw Railway Company upon its property; that on the third day of February, 1874, in pursuance of the terms of said trust-deed, they took possession of said railway and its other property, and on the 14th of February, 1874, filed their bill to foreclose said mortgage, in this court, which suit is still pending. The bill alleges that other liens are also existing against said railway company; that its bonded debt, secured by mortgages, amounts to $6,450,000; that its entire franchises and property are not worth to exceed $1,088,749; that its net earnings have never been sufficient to pay the interest on its debt; that its capital stock is of no real value, and the assessment thereof at $2,013,415 is illegal and void; that the said board of equalization did not equalize the property of said railway company with all other personal property in the State of like character, nor its lands, lots, right of way, and other real estate, with all other lands, lots, and real estate of like character in the State, but pretended to equalize said personal property owned by like corporations, and said real estate owned by like corporations; that the rates of taxation are different in each and all of the counties, towns, and municipalities through which the said railway runs; and prays that the said railway company may be enjoined from paying, and the other defendants from collecting, any of said taxes.

The defendants, except the railway company which was defaulted, filed an answer denying that in the lists and schedules filed by the railway company its property was valued at its fair cash value; or that it was listed and scheduled in the manner required by law, in this, that certain real estate was listed and scheduled as railroad track, which was used for stations or other purposes than railroad track, which real estate was subsequently assessed by the local town and county assessors, as was their duty, as real estate other than railroad track; and said assessors in like manner assessed the tangible personal property of said railway company, and none other, in their respective localities, which did not form part of the rolling-stock of said company. Defendants deny that any portion of the property of said company was doubly assessed; admit the equalization by the county and State boards, but deny that

the State board, in the assessment of the right of way or railroad track and improvements thereon, took into consideration the increased value of such right of way, arising from the fact that the same had been graded, and bridges and culverts built thereon, as it was believed such increased value could be more fairly and equitably ascertained in the assessment of capital stock; deny that the State board distributed the assessed value of said railway track among the various counties, &c., in any other manner than as required by law. Defendants admit that the rate of taxation for local purposes is different in the different municipal corporations through which the road passes; that the State board of equalization adopted and acted on the rules set forth in the bill in the assessment of the capital stock, including the franchises of said railway company; and that said board did not attempt to make an assessment of the value of the franchises as separate from the assessment under the designation " capital stock," but that the same was included in said assessment under that designation; admit no other notice was given of the proceedings of said board, than such as the law gives; deny that said State board made an arbitrary addition or deduction to the assessed value of the property in the respective counties without any regard to the actual value, and allege that said board examined the abstracts of property assessed for taxation by the various local assessors of the State, as returned to the auditor, and ascertained as nearly as was practicable the necessary rates of addition and deduction to be made to the assessed value of the several classes of property as equalized by the various county boards, to make a just equalization of the assessed value of property between the respective counties throughout the State; deny that said State board distributed to any county any greater portion of the aggregate value of the railroad track of said company than the value of the portion of such track actually situated in such county, and deny that the action of said State board resulted in the assessment of property of said company for taxation in one county, which was in fact situate in another county; admit that such proceedings have taken place, that the taxes as alleged in said bill have been extended upon said equalized assessments, and that the collectors in the various counties threaten to collect

the same, except as to $\frac{7}{36}$ of the State tax levied and extended upon said assessment, under the act of April 16, 1869, entitled "An Act to fund and provide for the paying of the railroad debt of counties, townships, cities, and towns," which $\frac{7}{36}$ of the State tax was after the same was levied and extended in a case involving the validity of the act of April 16, 1869, held by the Supreme Court of the State to be unconstitutional and void, since when the defendants have disclaimed all right to collect said $\frac{7}{36}$ per cent of said State tax, and have made no effort to collect the same; and in cases where said $\frac{7}{36}$ of said tax had been collected, the same has been refunded in pursuance of an act of the general assembly in force March 26, 1875. A replication was filed, and the case was heard on bill, answers, replication, an agreed state of facts, and exhibits therein referred to, and the report of the examiner, and a decree entered perpetually enjoining the collection of the taxes, or any of them in the bill mentioned. The defendants, who are the collectors in the various counties through which the road runs, bring the case to this court.

It is not deemed necessary to make any special statement in regard to the two other cases, as the facts in them are substantially the same as those above given.

*Mr. Lyman Trumbull* and *Mr. James K. Edsall*, Attorney-General of Illinois, for the appellants in the first case.

*Mr. Trumbull* submitted, —

1. The objection that the local assessors assessed part of "the railroad track" as real estate, other than railroad track, is not sustained by the evidence.

2. The great point in the case is the alleged unconstitutionality of the act creating the State board of equalization, as it is not pretended that the action of the board was not according to the statute.

It is said that the constitution requires the property of every person and corporation, for the purpose of taxation, to be valued separately, and that the act requires the board of equalization to consider all property listed and assessed in different counties, by a classification of the same into the classes of personal property, railroad property, lands, &c.; and, upon such consid-

eration, to determine what addition to or deduction from the aggregate assessed value of each of said classes should be made in any county, or throughout the State; and requires the said board to make such addition or deduction by a rate per cent on the assessed value of each class. The answer to this objection is, that the property of every person and corporation is by the law valued separately in the first instance; and the only effect of the action of the State board of equalization is to so adjust the assessment that each person or corporation shall pay a tax in proportion to the value of his or its property.

*Adsit* v. *Lieb*, 76 Ill. 198, disposes of the question thus raised. In that case, it was decided that " the legislature is not prohibited by the constitution from creating a State board of equalization, and investing it with power to equalize the assessments of the different counties for the purpose of producing uniformity in the valuation."

It is next objected to the constitutionality of the act, that it provides that the railroad track, rolling-stock, capital stock, and franchise, shall be taxed in the several counties, cities, towns, &c., in proportion that the length of the main track in such county, city, town, &c., bears to the whole length of the road in the State, except the value of the side track, and all turnouts, and all station-houses, dépôts, machine-shops, or other buildings belonging to the road, shall be taxed in the county, city, town, &c., in which the same are located; that the county, city, town, &c., special taxes are different; and that such taxes, levied on an assessment so made and distributed, are not uniform within the jurisdiction imposing the same, and are therefore illegal.

This precise question has been decided in Missouri, under a similar constitutional provision, and the constitutionality of such legislation sustained. *State* v. *Severance*, 55 Mo. 388.

The case of *Missouri River, &c., R.R. Co.* v. *Morris*, 1 Amer. Ry. R. 365, 7 Kan. 210, is to the same effect.

So, also, it was decided by this court that the provision of the Constitution of Illinois, requiring taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same, did not prevent the taxation of the owners of the stock of a national bank in that State at the place

where the bank was located, without regard to their places of residence. *Tappan* v. *Merchants' National Bank,* 19 Wall. 501.

The ninth section of the ninth article of the constitution introduces no new rule as to the assessment of property; that was provided for by sect. 1 in the same article; and the general assembly, in strict obedience thereto, has provided for the election of persons to make the assessment of the railroad track, rolling-stock, and capital stock. All the ninth section does, is to provide that the tax shall be *uniform* in respect to persons and property. The bill fails to show wherein the tax in each county, city, &c., is not uniform within the jurisdiction of the body imposing the same. The fact that special taxes are different in different localities, and that the same species of property, and of the same value, is taxed more in one county, city, &c., than another, furnishes no constitutional objection to the tax in any of the localities. If it was unequal within the jurisdiction of the municipality imposing the tax, it would be objectionable; but this is not pretended. *Missouri River, &c., R.R. Co.* v. *Morris,* 7 Kan. 210; *Hines* v. *Leavenworth,* 3 id. 201.

The objection that the railroad track, rolling-stock, and capital-stock tax is apportioned to the several counties, cities, &c., according to the mileage principle, amounts to nothing more than a complaint that the railroad track, &c., has been assessed too much in some localities, and not enough in others. The right to assess in each county is not denied. When property is subject to taxation, and has been assessed for that purpose by the proper officers, as in this case, the fact that it is assessed too much or too little in any particular locality affords no ground for a court of equity to enjoin the collection of the tax. *Albany, &c., R.R.* v. *Town of Canaan,* 16 Barb. 244; *Clinton School District's Appeal,* 56 Penn. St. 317; *Stewart* v. *Maple,* 70 id. 221; *Dowds* v. *City of Chicago,* 11 Wall. 109.

All the objections stated under this head have been especially considered and passed upon by the Supreme Court of Illinois. *C., B., & Q. R.R. Co.* v. *Cole,* reported in pamphlet copy of Tax-Injunction Cases, p. 43; *Munson* v. *Wilder,* 66 Ill. 383; *Du Page Co.* v. *Jenks,* 65 id. 275.

3. The mode provided by the act and adopted by the board of equalization for the assessment of the capital stock of the

railroad company is not unconstitutional. It is authorized by the first section of art. 9 of the constitution of the State. This section gives authority to tax corporations, &c., owning or using franchises, in such manner as the legislature shall from time to time direct. There is nothing in the constitution which prohibits the legislature from appointing different persons to ascertain the value of the property of different classes of persons.

The objections which are being considered under this head have been overruled by the Supreme Court of the State. Tax-Injunction Cases, 23.

4. The objection that the board of equalization acted without notice has also been overruled by the Supreme Court. Tax-Injunction Cases, 34; *Adsit* v. *Leib*, 76 Ill. 201. See also *Missouri River, &c., R.R. Co.* v. *Morris*, 7 Kan. 210.

5. The objection to the assessment of the capital stock and franchise of the company by the State board of equalization, and to the manner in which it was done, is also overruled by the decisions of the Supreme Court of the State. *Porter* v. *Frankfort, &c., R.R. Co.*, 76 Ill. 561; *Republic Life Insurance Co.* v. *Pollock*, Tax-Injunction Cases, 35; *C., B., & Q. R.R. Co.* v. *Cole*, id. 43.

These are questions peculiarly within the province of the State tribunals, and their decisions are binding on this court. *Nesmith* v. *Sheldon*, 7 How. 818; *Carpenter* v. *Page*, 17 id. 462; *Wetherspoon* v. *Duncan*, 4 Wall. 217; *Delaware R.R. Tax Cases*, 18 id. 231; *Hamilton Co.* v. *Massachusetts*, 6 id. 633; *Lane Co.* v. *Oregon*, 7 id. 71; *Bailey* v. *R.R. Co.*, 22 id. 604.

*Mr. R. G. Ingersoll*, for the appellees, submitted the following points : —

*First*, The revenue law of 1872 provides only for taxation by valuation, and has nothing to do with an excise or license tax.

*Second*, The taxing power can only be exercised upon property within the jurisdiction of the body imposing the same.

*Third*, Real estate can only be taxed at its actual *situs*.

*Fourth*, The *situs* of the rolling-stock of a railway corporation is where the general office of such corporation is.

*Fifth,* Personal property cannot be changed into real estate, and real estate into personal property, for the purposes of taxation.

*Sixth,* Indebtedness cannot be taxed as against the debtors.

*Seventh,* The rules laid down by the board of equalization for the ascertainment of value cannot produce a correct valuation.

*Eighth,* The principle of uniformity has been violated.

*Ninth,* The Constitution of Illinois places the property of corporations and individuals upon an equality.

*Tenth,* By the law of 1872, corporations are denied privileges and rights accorded to individuals.

*Eleventh,* The board of equalization cannot disregard the sworn returns of the railway company, and cannot raise the valuation without evidence justifying it, nor then without notice to the company.

*Twelfth,* It is unlawful to classify property according to owners.

*Thirteenth,* The assessment by the board was fraudulent, and made not only without evidence, but contrary to evidence.

*Fourteenth,* The Supreme Court of the United States is not bound by the decision of the State court in this case, even if such decision stood unquestioned by the State court.

*Fifteenth,* In any event, where there are conflicting decisions by the State court, this court has the power to follow those decisions which are in accordance with the constitution of the State.

In the second case, *Mr. James K. Edsall,* Attorney-General of Illinois, appeared for appellants. See abstract of his brief, *infra.*

*Mr. C. Beckwith* and *Mr. Obadiah Jackson* for appellees, submitted, —

1. The decisions of the Supreme Court of Illinois are not conclusive.

The complainants insist that the assessments set forth in their bill are prohibited by that clause of the Fourteenth Amendment of the Federal Constitution which provides that "no State shall deprive any person of life, liberty, or property, without due process of law."

State laws and constitutions are construed by the Federal courts according to their own judgment in all cases where it is necessary to determine whether a right secured by the Federal Constitution has been violated. *Jefferson Bank* v. *Skelly*, 1 Black, 436; *The Hoboken Bridge*, 1 Wall. 116; *Ward* v. *Maryland*, 12 id. 418; *Delmas* v. *Ins. Co.*, 14 id. 661.

2. The mode of assessment adopted in this case is not warranted by the constitution and laws of the State.

3. The constitution of the State does not authorize an assessment of the franchise of a corporation by valuation.

An excise tax may be imposed under art. 9 of the State constitution upon a franchise, in the same manner as such a tax may be imposed upon jugglers, showmen, &c., having special privileges. The constitution did not intend to permit double taxation; that is, on a valuation and by an excise tax.

The rule of assessment adopted by the State board is unjust, as it compels the payment of taxes upon debts.

*Mr. P. Phillips* also for appellees.

The Federal courts have jurisdiction of the case, both on the ground of citizenship and to prevent a multiplicity of suits.

The restriction in the thirty-fourth section of the Judiciary Act of 1789 applies only to trials at common law: it does not apply to the decisions of the State courts upon questions of a general nature. *Nives* v. *Scott*, 13 How. 271; *Russell* v. *Southard*, 12 id. 144; *Watson* v. *Tarpley*, 18 id. 517.

The nature of taxation, what uses are public and what private, and the extent of unrestricted legislative power, are matters which no State court can conclusively determine for us. *Olcott* v. *Supervisors*, 16 Wall. 678; *Township* v. *Pine Grove*, 19 id. 671.

The question, then, for the determination of this court is, whether the "rules and principles" adopted by the board are "just and equitable."

The debt of the corporation is not part of the possessions of the corporation, but is property belonging to the creditor who holds it. *State* v. *Thomas*, 2 Dutch. 184; *State Tax*, 15 Wall. 320; *Bradley* v. *People*, 4 id. 459.

The rule, therefore, adopted by the board is based upon valuations, not of the property of the *corporations*, but of *property belonging to others*.

This is a departure from the authority conferred. A discretion so exercised cannot be substituted for legal requisition. *Bank of Chemung* v. *City of Elmira*, 53 N. Y. 52.

The rule adopted does not secure the uniformity demanded alike by just principles of taxation and constitutional guaranties.

The mode of distributing the assessed value of the property of the company, so as to subject it to taxation in the several counties and towns without regard to the real location of the property, is also illegal.

The State cannot *transfer property* from a county in which it is located into another, and thus subject it to a different rule of taxation than that which obtains at its *situs*. *Bank of Commerce*, 2 Black, 631; *St. Louis* v. *Terry Co.*, 11 Wall. 430.

In the third case, *Mr. James K. Edsall*, Attorney-General of the State of Illinois, and *Mr. Lyman Trumbull*, appeared for the appellants.

*Mr. Edsall* contended, —

I. Under the statutes of Illinois, railroad corporations may be assessed upon their capital stock and franchises.

II. The meaning of the terms " capital stock, including the franchise " (with all other questions involved in the present cases), has been determined by the Supreme Court of Illinois. These decisions, being unreported, are referred to as " Illinois Tax-Injunction Cases," printed in pamphlet form.

In these cases it is held, —

1. That the words " capital stock " mean the property of the corporation, and not the shares of stock owned by the shareholders.

2. That it was competent for the legislature to require the " capital stock " of corporations, as thus construed, to be assessed for the purpose of taxation against the corporation.

3. That the franchise of a corporation is property, and as such may be taxed, in proportion to its value, the same as other property. Illinois Tax Injunction Cases, pp. 3, 36.

III. The rule adopted by the board to ascertain the value of the " capital stock and franchise " of a corporation is at least theoretically correct.

This rule is, in substance, as follows:—

"*First*, The market or fair cash value of the shares of capital stock and the market or fair cash value of the debt (excluding from such debt the indebtedness for current expenses) shall be combined or added together; and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchise, respectively, of such companies and associations.

"*Second*, From the aggregate amount, ascertained as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property, respectively, of such companies and associations."

This mode of taxing corporations upon their capital stock is upheld in other States. *Commonwealth* v. *Hamilton Manuf. Co.*, 12 Allen, 298; *Munroe Co. Savings Bank* v. *Rochester*, 37 N. Y. 366; *Osborn* v. *N. Y. & N. H. R.R. Co.*, 40 Conn. 491.

This mode of taxing corporations was recommended by the commissioners appointed in 1870 by the legislature of New York.

The board of equalization having jurisdiction, their action is conclusive, even though they may have erred in their judgment. *The People* v. *Halsey*, 53 Barb. 548.

IV. The assessment does not appear to be excessive.

V. The decisions of the Supreme Court of a State, as to the proper construction of its revenue laws, are conclusive on the Federal courts.

VI. The assessment in question being confided to the State board of equalization, its action cannot be collaterally impeached for mere error in judgment, but only for fraud, accident, or mistake.

*Mr. O. H. Browning* and *Mr. Wirt Dexter* for the appellees.

I. The assessment for capital stock is illegal and void under the first clause of sect. 1, art. 9, of the Constitution of Illinois.

*First*, Because the law under which the assessment was made is unconstitutional. *Solamons* v. *Laing*, 14 Jurist, for Dec., 1850; *Dodge* v. *Woolsey*, 18 How. 343; *Van Allen* v. *The Assessors*, 3 Wall. 583, 584; *Bradley* v. *The People*, 4 id. 459;

*Bank* v. *The Commonwealth*, 9 id. 359; *Austin* v. *Board of Aldermen of City of Boston*, 14 Allen, 362; Ang. & Ames on Corp., sect. 558, n. 1; *Brightwell* v. *Mallory*, 10 Yerg. 196; *State* v. *Franklin Bank*, 10 Ohio, 90, 97; Redf. Am. Railw. Cases, 500, 507, 510, 568; *State* v. *Thomas*, 2 Dutch. 184; Const. of Ill., sect. 1, art. 9, sect. 9, art. 11; *Railroad Co.* v. *Penn.*, 15 Wall. 300, 320; *The State* v. *Branin*, 3 Zab. 500; *Smith* v. *Burley*, 9 N. H. 428.

*Second*, Because, if the law shall be held to be constitutional, the assessment, as made, was not authorized by the law.  *Porter* v. *R., R. I., & St. L. Railw. Co.*, Chic. Leg. News, June 27, 1874; *The C., B., & Q. R.R. Co.* v. *Cole et als.*, id. July 3, 1875; *Bank of Chemung* v. *City of Elmira*, 53 N. Y. 52.

II. The assessment cannot be sustained as a tax upon the franchise of the corporation under the second clause of sect. 1, art. 9, of the Constitution of Illinois.

*First*, Because the general assembly has passed no law, uniform as to the class upon which it operates, directing the manner in which persons and corporations shall be taxed for the ownership or use of franchises and privileges.

*Second*, Because the State board of equalization disregarded and violated the rule which it had adopted, and by which it had resolved to be governed, in making the assessment.

*Third*, It cannot be sustained as a franchise tax; because the assessment was not, in fact, for or on account of franchises and privileges.

*Fourth*, Because, in making it, the State board totally disregarded the uniformity and equality of assessment required by the constitution.  Redf. Railw. Cases, 500; *United R.R. & Canal Co.* v. *Comm'r*, 8 Vroom, 247, 248; *Moore* v. *Chicago*, 60 Ill. 243; *The C., B., & Q. R.R. Co.* v. *Cole et als.*, Chic. Leg. News, July 3, 1875; *Knowlton* v. *Supervisors*, 9 Wis. 414; *Weeks* v. *Milwaukee*, 10 id. 242; *Hersey* v. *Board of Supervisors*, 16 id. 186; *Henry* v. *Chester*, 15 Vt. 460; *Brewer Brick Co.* v. *Inhabitants of Brewer*, 62 Me. 74, 75; *Portland Bank* v. *Apthorp*, 12 Mass. 252; · *Commonwealth* v. *People's Savings Bank*, 5 Allen, 431; *Oliver* v. *Washington Mills*, 11 id. 268; *Bureau County* v. *C., B., & Q. R.R. Co.*, 44 Ill. 238.

MR. JUSTICE MILLER delivered the opinion of the court.

The three cases whose titles stand at the head of this opinion are appeals from decrees of the Circuit Court for the Northern District of Illinois, enjoining the appellants from the collection of taxes assessed by the proper officers of the State of Illinois against three several railroad companies, organized under the laws of that State, and doing business in it. The plaintiffs in the first named of the above suits are mortgagees of the Toledo, Peoria, and Warsaw Railroad Company. In the other two cases the complainants are stockholders of the respective companies whose interests they represent; namely, the Chicago and Alton Railroad Company, and the Chicago, Burlington, and Quincy Railroad Company.

The act of the legislature of Illinois of March 30, 1872, under which the taxes complained of were assessed, makes special provisions for the taxation of railroads and other corporations, the main feature of which is the purpose of leaving to each county, city, and town the power of assessing for taxation what is properly local in the same manner that other similar property is taxed in that municipality, and at the same time to subject to like taxation on some fair basis that which is not in its nature so clearly local, but which, by reason of its being appurtenant or incident to the railroad, should pay its share to the State, and to all the counties, towns, and cities through which any part of the road runs. The theory of the system is manifestly to treat the railroad track, its rolling-stock, its franchise, and its capital, as a unit for taxation, and to distribute the assessed value of this unit according as the length of the road in each county, city, and town bears to the whole length of the road.

It provides, therefore, for three separate valuations, —

1. Of the real estate in each county, city, and town, which is not a part of the track and right of way, and of the personal property, such as tools, implements, &c., which remain permanently at that locality. These are valued by the local assessor and taxed by the local authorities in precisely the same manner that other real and personal property are assessed and taxed.

2. The railroad track, including the right of way, the grad-

ing and superstructure, and such dépôts, buildings, and other improvements as are on it, and all the rolling-stock and other personal property not local.

The entire value of this, owned by any company in the State, is ascertained by a report made by the proper officer of the railroad company, submitted to a State board of equalization, which fixes this value finally; and each county, city, and town taxes the company on so much of this assessment as the length of the track within that locality bears to the whole length of the track assessed by the board.

These two subjects of assessment are by the statute called the tangible property of the company.

It is obvious, however, that while a fair assessment under these two descriptions of property will include all the visible or tangible property of the corporation, it may or may not include all its wealth. There may be other property of a class not visible or tangible which ought to respond to taxation, and which the State has a right to subject to taxation. Thus it may occur, as in fact is claimed by one of these companies, that, being insolvent, and its earnings not being sufficient to pay any thing beyond its necessary expenses for operating the road and its repairs, this tangible property represents more than the real wealth of the company and its property. While, on the other hand, another one of these companies is so rich that, after paying its expenses and interest on a large amount of debt, it declares large dividends; and this interest and these dividends, when looked to in reference to what is called the tangible property, show that there is here another element of wealth which ought to pay its share of the taxes.

3. This element the State of Illinois calls the value of the franchise and capital stock of the corporation, — the value of the right to use this tangible property in a special manner for purposes of gain. This constitutes the third valuation, which is likewise to be made by the board of equalization; and, when thus ascertained, is subjected to the taxation of the State, counties, towns, and cities, by the same rule that the value of the road-bed is; namely, according to the length of the track in each taxing locality. The words " capital stock," as here used, do not mean the shares of the stock, but the aggre-

gate capital of the company. This is obvious from the proviso to the fourth paragraph of sect. 3 of the revenue law. As this paragraph lies at the basis of these controversies, it is here given *verbatim* : —

" The capital stock of all companies and associations now or hereafter created under the laws of this State shall be so valued by the State board of equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association. Said board shall adopt such rules and principles for ascertaining the fair cash value of such capital stock as to it may seem equitable and just; and such rules and principles, when so adopted, if not inconsistent with this act, shall be as binding and of the same effect as if contained in this act, — subject, however, to such change, alteration, or amendment as may be found, from time to time, to be necessary by said board : *Provided*, that in all cases where the tangible property or capital stock of any company or association is assessed under this act, the shares of capital stock of any such company or association shall not be assessed or taxed in this State. This clause shall not apply to the capital stock, or shares of capital stock, of banks organized under the general banking laws of this State."

That the franchise, capital stock, business, and profits of all corporations are liable to taxation in the place where they do business, and by the State which creates them, admits of no dispute at this day. " Nothing can be more certain in legal decisions," says this court in *Society for Savings* v. *Coite*, 6 Wall. 607, " than that the privileges and franchises of a private corporation, and all trades and avocations by which the citizens acquire a livelihood, may be taxed by a State for the support of a State government." *State Freight Tax Case*, 15 Wall. 232 ; *State Tax on Gross Receipts*, 15 Wall. 284. But it has been a *desideratum*, perhaps not yet fully attained, to find a method of taxing this species of property which will be at the same time just to the owners of it, equal and fair in its relations to taxes on other property, and which will enforce the just contribution that such property should pay for the benefits which, more than property generally, it receives at the hands of government.

The tax on the deposits of savings-banks, in *Society for Savings* v. *Coite*, which was held to be of this class by the court; the tax on freight, in the *Freight Tax Cases;* and, in the other cases, the tax on gross receipts, by the State of Pennsylvania, — are all attempts at arriving at the desired result in the best mode.

The statute of Illinois, and the rule adopted by the board of equalization, under the power conferred by the clause we have just recited, may not be the wisest mode of doing complete justice in this difficult matter; but we confess we have, on the whole, seen no scheme which is better adapted to effect the purpose, so far as railroad corporations are concerned, of taxing at once all their property, and of making the tax just and equal in its relation to other taxable property of the State.

The rule adopted by the board is as follows: —

" *First*, The market or fair cash value of the shares of capital stock, and the market or fair cash value of the debt (excluding from such debt the indebtedness for current expenses), shall be combined or added together; and the aggregate amount so ascertained shall be taken and held to be the fair cash value of the capital stock, including the franchise, respectively, of such companies and associations.

" *Second*, From the aggregate amount ascertained as aforesaid, there shall be deducted the aggregate amount of the equalized or assessed valuation of all the tangible property, respectively, of such companies and associations (such equalized or assessed valuation being taken, in each case, as the same may be determined by the equalization or assessment of property by this board); and the amount remaining, in each case, if any, shall be taken and held to be the amount and fair cash value of the capital stock, including the franchise, which this board is required by law to assess, respectively, against companies and associations now or hereafter created under the laws of this State."

It may be assumed for all practical purposes, and it is perhaps absolutely true, that every railroad company in Illinois has a bonded indebtedness secured by one or more mortgages. The parties who deal in such bonds are generally keen and far-sighted men, and most careful in their investments. Hence the value which these securities hold in market is one of the

truest *criteria*, as far as it goes, of the value of the road as a security for the payment of those bonds.

These mortgages are, however, liens on the road, and, taking precedence of the shares. of the stockholder, may or may not extinguish the value of his shares.  They must in any event affect that value to the exact amount of the aggregate debts. For all that goes to pay that debt and its interest diminishes *pro tanto* the dividend of the shareholder and the value of his share.

It is therefore obvious, that, when you have ascertained the current cash value of the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock, and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock.

This would of itself be, perhaps, the fairest basis of taxation for the State at large, if all railroads were solvent and paid the interest promptly on their funded debt.  But this has never been the case in Illinois; and it is doubtful if this happy state of affairs is likely to prevail soon in that or any other State of the Union.  If taxes were assessable alone on the value of the capital stock and franchises of the corporation, cases might be found where these were worth nothing, and such companies would pay no tax even for their real estate and personal property.  And this is precisely the main argument of counsel for the Toledo, Peoria, and Warsaw Railroad Company, in opposition to the law and to the rule of the board of equalization.  But individuals do not escape taxation on their real and personal property because they are insolvent.  In several of the States many men in effect pay tax on their lots or lands, and on the mortgage which covers it and exceeds it in value, and on a large amount of personal property, while the mortgage debt exceeds in amount all that they are worth in the world.  No State has ventured to establish the principle of permitting its visible, tangible property to escape taxation, relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts.

The system adopted by the statute of Illinois, and the rule

of the board of equalization, preserve this principle of taxing all the tangible property at its value, and taxing the capital stock and franchise at their value, if there be any, after deducting the value of the tangible property. The case of Toledo, Peoria, and Warsaw Company, as we have said, is used as an illustration of the inequality which this rule works, and which counsel say is forbidden by the constitution of the State, thus rendering the tax assessed against it void. That company is insolvent, and in the hands of a receiver. It is unable to pay any interest on its bonds. Its capital stock is of no value. But the board of equalization assessed the capital stock and franchise at $2,003,415, and its tangible property at $2,629,367, thus assessing a property which pays but little, if any thing, beyond its running expenses, at the sum of $4,632,782.

This sounds plausible; but it is nothing more. Concede for the present that the capital stock is sunk and is of no value; concede that the funded debt of the company has at present no market value, or is unsalable, — there remains what is valued as worth over $2,600,000 of real and personal property, which, like all other property of individuals or corporations, ought to pay its proportion of the public burdens. There also remains the value of the franchise, which is not destroyed by the circumstance that the road does not pay interest on its debt. Does anybody believe that this debt is of no value, — that the holders of it attach no value to this franchise? Are they willing to give up the right to operate the road, to receive freights and fares, to endeavor to make it pay something more than the mere value of the personal property of the track, the dépôts, the grounds, the rolling-stock, and other tangible property? Is it supposed by any one that they intend or will ever sell these separately or apart from the right to use them as a railroad? Why do not the bondholders sell all these things under their mortgage at auction as a man would sell town-lots and household furniture, and horses and carriages? The reason is too clear to escape observation. It is because in the case of the railroad there is attached to all this property, and goes with it, a privilege, a right to use it through the whole extent of the richest counties of Illinois, in transporting persons and property, in a manner which adds immensely to its value when con-

sidered as so much iron, so much land, and so much personal property.  By virtue of this privilege or franchise, this is all aggregated into a unit, well adapted to make money by its use in that way, with a chartered right to use it for that purpose.

It is this *franchise* which the legislature of Illinois intended to tax, which it had a right to tax; and in taxing it committed no injustice, if it was fairly assessed, though the corporation which holds it may be so utterly bankrupt that it must necessarily pass from it into other hands.  In those hands, disembarrassed of its overweight of debt, who shall say that it is not worth $2,000,000? and who shall say that such is not the real value now of this franchise?

We shall presently consider the extent to which a court of justice can enter upon the consideration of this question; but we take occasion here to say, that, in the view we have taken of the matter, there is no sufficient evidence in these cases to show that if the rule adopted by the board be just, that it has been unfairly applied to any of these roads, except in the single case of a mistake in the amount of the bonds of the Chicago, Burlington, and Quincy Railroad Company, — a mistake induced by the report of that company's officer to the State auditor.

Another objection to the system of taxation by the State is, that the rolling-stock, capital stock, and franchise, are personal property, and that this, with all other personal property, has a local *situs* at the principal place of business of the corporation, and can be taxed by no other county, city, or town, but the one where it is so situated.

This objection is based upon the general rule of law that personal property, as to its *situs*, follows the domicile of its owner.  It may be doubted very reasonably whether such a rule can be applied to a railroad corporation as between the different localities embraced by its line of road.  But, after all, the rule is merely the law of the State which recognizes it; and when it is called into operation as to property located in one State, and owned by a resident of another, it is a rule of comity in the former State rather than an absolute principle in all cases.  *Green* v. *Van Buskirk*, 5 Wall. 312.  Like all other laws of a State, it is, therefore, subject to legislative repeal,

modification, or limitation; and when the legislature of Illinois declared that it should not prevail in assessing personal property of railroad companies for taxation, it simply exercised an ordinary function of legislation. Whether allowing the rule to stand as to taxation of individuals, and changing it as to railroads or other corporations, it violated any rule of uniformity prescribed by the constitution of the State, we will consider when we come to the constitutional objections to the statute.

It is further objected that the railroad track, capital stock, and franchise is not assessed in each county where it lies according to its value there, but according to an aggregate value of the whole, on which each county, city, and town collects taxes according to the length of the track within its limits.

This, it is said, works injustice both to the counties and to the companies. To the counties and cities, by depriving them of the benefit of this value as a basis of local taxation; to the company, by subjecting its track and franchises, on the basis of this general value, to the taxation of the counties and towns, varying, as they do, in rate, without the benefit of the rule of assessment which prevails in those counties in the valuation of other and similar property. But, as we have already said, a railroad must be regarded for many, indeed for most purposes, as a unit. The track of the road is but one track from one end of it to the other, and, except in its use as one track, is of little value. In this track as a whole each county through which it passes has an interest much more important than it has in the limited part of it lying within its boundary. Destroy by any means a few miles of this track within an interior county, so as to cut off the connection between the two parts thus separated, and, if it could not be repaired or replaced, its effect upon the value of the remainder of the road is out of all proportion to the mere local value of the part of it destroyed. A similar effect on the value of the interior of the road would follow the destruction of that end of the road lying in Chicago, or some other place where its largest traffic centres. It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole.

There are other objections urged by counsel against the equity and fairness of the Illinois mode of assessing and taxing railroad companies as a system. But we cannot notice them all. Those above commented on are the most important.

There is, however, an objection urged to the conduct of the board of equalization, resting on the action of the board in these particular cases, in which they are charged with a gross violation of the law to the prejudice of the corporations, which we will consider.

The statute requires the proper officers of the railroad companies to furnish to the State auditor a schedule of the various elements already mentioned as necessary in applying the statutory rule of valuation. It is charged that the board of equalization increased the estimates of value so reported to the auditor, without notice to the companies, and without sufficient evidence that it ought to be done; and it is strenuously urged upon us, that for want of this notice the whole assessment of the property and levy of taxes is void.

It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is void as to the railroad companies, it must be equally void as to every other owner of property in the State, when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void it is impossible to say. The main function of this board is to equalize these assessments over the whole State. If they find that a county has had its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they raise it to that standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in that county. Must each one of these have notice and a separate hearing? If a railroad company is by law entitled to such notice, surely every individual is equally entitled to it. Yet if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is

there any hardship in the matter. This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked.

As we do not know on what evidence the board acted in regard to these railroads, or whether they did not act on knowledge which they possessed themselves, and as all valuation of property is more or less matter of opinion, we see no reason why the opinion of this court, or of the Circuit Court, should be better, or should be substituted for that of the board, whose opinion the law has declared to be the one to govern in the matter.

It is said that the statute of Illinois is void, because it violates the principle of uniformity, and taxes corporations in a manner different from that which governs taxation of individuals.

The sections of the constitution relied on in support of this proposition are sects. 1 and 10 of article 9, which are as follows: —

SECT. 1. "The general assembly shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property, — such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; but the general assembly shall have power to tax pedlers, auctioneers, brokers, hawkers, merchants, commission-merchants, showmen, jugglers, innkeepers, grocery-keepers, liquor-dealers, toll-bridges, ferries, insurance, telegraph, and express interests or business, venders of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law, uniform as to the class upon which it operates."

SECT. 10. "The general assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, — such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

As regards this latter section, there is no claim that *the rate* of taxation levied by any municipal corporation, on the assessed value of railroad property within its limits, is greater than on other property.

Nor is it asserted that the valuation of that part of the property which the statute regards as strictly local — namely, real estate not a part of the track, and tools and implements used exclusively within the locality — has been assessed on any other principle than that which is applied to the property of individuals.

But the contention is, that the rule of treating the road, its rolling-stock and franchises, as a unit, and assessing it as a whole, on which each municipality levies its taxes according to the length of the road within its limits, violates the principles of this section. We have already discussed this question, and are of opinion that taxes assessed by that rule on the railroad property by the municipality are uniform when the rate of taxation is the same on the assessment thus ascertained that it is on other property.

This court has expressly held in two cases, where the road of a corporation ran through different States, that a tax upon the income or franchise of the road was properly apportioned by taking the whole income or value of the franchise, and the length of the road within each State, as the basis of taxation. *The Delaware Railroad Tax Case,* 18 Wall. 208; *Erie R.R. Co.* v. *Pennsylvania,* 21 Wall. 492.

As to sect. 1, we need not inquire very closely whether the mode adopted by the statute and the rules of the board of equalization produces a valuation for railroad companies different from that of individuals, though, as we have already said, it does not appear to us to produce any inequality to the prejudice of the companies. But we need not pursue that inquiry very closely, because the latter part of the section in express terms authorizes the legislature to "tax persons and corporations owning or using franchises in such manner as it shall from time to time direct, by general law; " and the only restriction on the power, as applied to this class, is, that it shall be "uniform as to the class upon which it operates."

There can be no doubt that all the classes named in this

clause, including pedlers, showmen, innkeepers, ferries, express, insurance, and telegraph companies, are taken out of the general rule of uniformity prescribed by the first clause, and the only limitation as to them is that of uniformity as to the class upon which the law shall operate ; that is, innkeepers may be taxed by one, ferries by another, railroads by another, provided that the rule as to innkeepers be uniform as to all innkeepers, the rule as to ferries uniform as to all ferries, and the rule as to railroad companies be uniform as to all railroad companies. As we have seen no evidence that the rule by which railroad property is taxed is not uniform in its action on all the railroad companies of Illinois, we can perceive no opposition to the constitution of the State in that rule.

But suppose it were otherwise; perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. It may be admitted that the system which most nearly attains this is the best. But the most complete system which can be devised, must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect. And when we come to its application to the property of all the citizens, and of those who are not citizens, in all the localities of a large State like Illinois, the application being made by men whose judgments and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature, and of the evidence on which human judgment is founded. *Tappan* v. *Merchants' National Bank*, 19 Wall. 504; *Weber* v. *Renhard*, 73 Penn. St. 373; *Commonwealth* v. *Savings Bank*, 5 Allen, 247; *Allen* v. *Drew*, 44 Vt. 174.

Let us suppose that the complaints made in these cases against the taxes were well founded ; that the mode adopted by the board of equalization to ascertain the value of the franchise and capital stock is not the best mode ; that it produces unequal and unjust results in some cases; that the same is true of the mode of ascertaining the basis of assessment for the taxation by municipalities; that the board of equalization increased the entire assessment on each company without sufficient evi-

dence; in short, let us suppose that in these and many other respects the proceedings were faulty and illegal, — does it follow that in every such case a court of equity will restrain the collection of the tax by injunction, or will enjoin the collection of the whole tax when it is obvious that in justice a large part of it should be paid, and if not paid, that the complainant escapes taxation altogether?

We propose to consider these questions for a moment, because the immense weight of taxation rendered necessary by the debts of the United States, of the several States, and of the counties, cities, and towns, has resulted very naturally in a resort to every possible expedient to evade its force.

It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity. *Mooers* v. *Smedley*, 6 Johns. Ch. 27 ; *Dodd* v. *Hartford*, 26 Conn. 239; *Green* v. *Munford*, 5 R. I. 478; *Messert* v. *Supervisors of Columbia*, 50 Barb. 190 ; *Dow* v. *Chicago*, 11 Wall. 108; *Hannewinkle* v. *Georgetown*, 15 Wall. 548.

The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid.

That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Rev. Stat. sect. 3224. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case*, interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived

from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice. See *Cheatham* v. *Norvell*, decided at this term ; *Nickoll* v. *United States*, 7 Wall. 122; *Dow* v. *Chicago*, 11 Wall. 108.

In this latter case, this court, after commenting upon the necessary reliance of the State governments upon the prompt collection of the taxes for their support and maintenance, and the ill consequences of interference with their proceedings in that matter, says, "No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, when the property is real estate, throw a cloud upon the title of complainant before the aid of a court of equity can be invoked." So, in the case of *Hannewinkle.* v. *Georgetown*, the court says, "It has been the settled law of this country for a great many years, that an injunction bill to restrain the collection of a tax on the sole ground of the illegality of the tax cannot be maintained. There must be an allegation of fraud, that it creates a cloud upon the title, that there is apprehension of a multiplicity of suits, or some cause presenting a case of equity jurisdiction." 15 Wall. 548. We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes; but we may say, that, in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction, and that mere errors or excess in valuation, or hardship or injustice of the law, or any grievance which can be remedied by a suit at law, either before or after payment of taxes, will not justify a court of equity to interpose by injunction to stay collection of a tax. One of the reasons why a court should not thus interfere, as it would in any transaction between individuals, is, that it has no power to apportion the tax or to make a new assess-

ment, or to direct another to be made by the proper officers of the State. These officers, and the manner in which they shall exercise their functions, are wholly beyond the power of the court when so acting. The levy of taxes is not a judicial function. Its exercise, by the constitutions of all the States, and by the theory of our English origin, is exclusively legislative. *Heine* v. *The Levee Commissioners*, 19 Wall. 660.

A court of equity is, therefore, hampered in the exercise of its jurisdiction by the necessity of enjoining the tax complained of, in whole or in part, without any power of doing complete justice by making, or causing to be made, a new assessment on any principle it may decide to be the right one. In this manner it may, by enjoining the levy, enable the complainant to escape wholly the tax for the period of time complained of, though it be obvious that he ought to pay a tax if imposed in the proper manner.

These reasons, and the weight of authority by which they are supported, must always incline the court to require a clear case for equitable relief before it will sustain an injunction against the collection of a tax, which is part of the revenue of a State. Whether the same rigid rule should be applied to taxes levied by counties, towns, and cities, we need not here inquire; but there is both reason and authority for holding that the control of the courts, in the exercise of power over private property by these corporations, is more necessary, and is unaccompanied by many of the evils that belong to it when affecting the revenue of the State. High on Injunc., sect. 369, and cases there cited. The assessments in the cases before us, of which complaint is made, are all made by the State board of equalization; and though the taxes are collected by the county authorities, a large part of them go to make up the revenue of the State.

In the examination which we have made of these cases, we do not find any of the matters complained of to come within the rule which we have laid down as justifying the interposition of a court of equity. There is no fraud proved, if alleged. There is no violation of the constitution, either in the statute or in its administration, by the board of equalization. No property is taxed that is not legally liable to taxation, nor is the rule of uniformity prescribed by the constitution violated.

If there is an excessive estimate of the value of the franchise or capital stock, or both, it is by an error of judgment in the officers to whose judgment the law confided that matter; and it does not lie with the court to substitute its own judgment for that of the tribunal expressly created for that purpose.

But there is another principle of equitable jurisprudence which forbids in these cases the interference of a court of chancery in favor of complainants. It is that universal rule which requires that he who seeks equity at the hands of the court must first do equity.

The defendants in all these cases are the clerks and treasurers of the counties, — the clerk who makes out the tax-list, and the treasurer who collects the taxes. These taxes are both the State and county taxes. It is clear, from the statements of the bills and from what we have already said, that there must be in every county mentioned a considerable amount of real estate and personal property coming within the character of local tangible property, and subjected to taxation on precisely the same principles, and no other, that all other personal and real estate within the county is taxed. It is equally clear that the road-bed within each county is liable to be taxed at the same rate that other property is taxed. Why have not complainants paid this tax? In reference to the latter, it is said, that they resist the rule by which the value of their road-bed in each county is ascertained, and therefore resist the tax. But surely it should pay tax by some rule. If the rule adopted gives too large a valuation in some counties, it must be too small in others. What right have they to resist the tax in the latter case? And in the former, is the whole tax void because the assessment is too large? Should they pay nothing, and escape wholly because they have been assessed too high? These questions answer themselves. Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them.

It is a profitable thing for corporations or individuals whose taxes are very large to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when in the end it is found that but a small part of the

tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction. It is not sufficient to say in the bill, that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The State is not to be thus tied up as to that of which there is no contest, by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed of a receipt in full for all the taxes assessed.

We are satisfied that an observance of this principle would prevent the larger part of the suits for restraining collection of taxes which now come into the courts. We lay it down with unanimity, as a rule to govern the courts of the United States in their action in such cases. Cooley on Tax. 537; *Palmer* v. *Napoleon*, 16 Mich. 176; *Hersey* v. *Supervisors*, 16 Wis. 185; *Roseberry* v. *Huff*, 27 Ind. 12; *Frazer* v. *Liebon*, 16 Ohio St. 614; *Parmely and Others* v. *The Railroad Companies*, 3 Dill. 19.

But, if for no other reason, we should reverse the decrees of the Circuit Court in these cases, because the same questions, involving the same considerations urged upon us here, have been decided by the Supreme Court of the State of Illinois in a manner which leads to the reversal of these. The cases referred to are *Samuel R. Porter, County Treasurer, and John W. Cook, County Clerk*, v. *Rockford, Rock Island, & St. Louis Railroad Co.*, decided at the January Term, 1874, and *The Chicago, Burlington, & Quincy R.R. Co.* v. *J. J. Cole and Another*, decided in June, 1875. In these two cases, all the points arising in the present cases were presented to the court, and decided adversely to the railroad companies. These questions all grew out of the validity and the construction of the tax-law involved in the present cases, and out of the same action of the board of equalization. The validity of the statute is not seriously questioned here on the ground of any conflict with the Constitution of the United States. If any such claim be set up, it is

sufficient to say it is without foundation. As the whole matter, then, concerns the validity of a State law as affected by the constitution of the State, that question, and the other one of the true construction of that statute, belong to the class of questions in regard to which this court still holds, with some few exceptions, that the decisions of the State courts are to be accepted as the rule of decision for the Federal courts.

It is, nevertheless, a satisfaction that our judgment concurs with that of the State court, and leads us to the same conclusions.

The decrees in all these cases are reversed. The cases are remanded to the Circuit Court, with directions to dissolve the injunction granted in each case, and to dismiss the bills.

It was said on the argument, and seems to be conceded, that, in the case of *The Chicago, Burlington, & Quincy R.R. Co.*, an agreement existed that the mistake of the board of equalization in assessing the company on bonds of its leased roads might be corrected in this suit. No such agreement is on file here, and we cannot act on it. But when the case is returned to the Circuit Court, of course such decree can be rendered in that regard as counsel may agree on. A similar remark applies to what the brief of the attorney-general of the State admits to be an error to the prejudice of the Chicago and Alton Company.