## Case No. 14,384.

### UNION PAC. R. CO. v. POTTAWATTAMIE COUNTY.

[4 Dill. 497.] [1]

Circuit Court, D. Iowa. May Term, 1877.

TAXATION—BRIDGE—RAILROAD COMPANIES.

Under the revenue laws of Iowa (Code 1873, §§ 808, 810), that portion of the bridge of the Union Pacific Railroad Company over the Missouri river, between Council Bluffs, Iowa. and Omaha, Nebraska, which lies within the limits of Iowa, may be taxed as a bridge, and not necessarily as a part of the road of the company; and this mode of taxation is not inconsistent with the decision of the supreme court in Union Pac. R. Co. v. Hall, 91 U. S. 343.

This suit is brought to restrain the collection of the state, county, and school taxes levied in Iowa for the year 1875 on that portion of the property of the Union Pacific Railroad Company commonly known as its "Missouri River Bridge." The city assessor of the city of Council Bluffs, in the year 1875, assuming that that portion of the Union Pacific Railroad extending over the Missouri river into the state of Iowa constituted a portion of a railway bridge across said river, proceeded to assess it under the provisions of sections 808 and 810 of the Code of 1873,

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

as follows. viz.: "The east one-half of the Union Pacific Railroad bridge across the Missouri river, valued at $350,000, and a strip of land two hundred feet wide, commencing at the west line of section 34, in township 15, and range 44, and running on or near the middle of sections 34 and 33 to the Missouri river, inclosing and including the approaches thereto, valued at $50,000." Afterward, said assessment, at the instance of the complainant, was modified by the board of equalization to the following: "The east one-half of the Union Pacific Railroad bridge across the Missouri river, valued at $350,-000." It will thus be seen that the assessment was made by the local assessor, and modified by the board of supervisors sitting as a county board of equalization, neither of which, the complainant claims, had any jurisdiction to assess said property.

The amount and denomination of tax levied by the board of supervisors upon such valuation and assessment are as follows:

| | |
|---|---:|
| State .................................. $ | 735 68 |
| County ................................. | 1,471 36 |
| School ................................. | 367 84 |
| Court-house ............................ | 651 76 |
| Bonds .................................. | 735 68 |
| Bonds, Mississippi and Missouri.... | 367 84 |
| Insane ................................. | 91 96 |
| Poor ................................... | 367 84 |
| Judgment ............................... | 91 96 |
| Independent school district of Council Bluffs ................................ | 2,942 72 |
| City of Council Bluffs................. | 3,678 40 |
| | $11,503 04 |

Of these. the state, school, independent school district of Council Bluffs, and city of Council Bluffs taxes, being an aggregate of $7,724.64, or about two-thirds of the entire amount, will be paid over by the collector to the different officers authorized to receive them as required by law. The bill of complaint for an injunction sets out, inter alia, these facts, and claims that the bridge in question can only be taxed as an integral portion of the Union Pacific Railroad, and that, under the revenue laws of Iowa, it is beyond the jurisdiction of the local assessor, and that the assessment was not made in the manner nor upon the principles required by those laws. An answer and replication have been filed, and the facts agreed upon by the counsel, and the cause is before the court on final hearing

A. J. Poppleton, for complainant.

James T. Lane, Abner Davison, and B. W. Hight, for defendants.

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge. Passing the question whether the bill states a case for an injunction, within the principles on this subject laid down by the supreme court in the Illinois Tax Cases, 92 U. S. 575, and the question whether the complainant, if right in the views on which the bill is based, has not a complete remedy at law, the fundamental question is whether, under the revenue laws of Iowa, the authorities of the state can lawfully tax the portion of the complainant's bridge over the Missouri river situate within the state of Iowa separately as a bridge, or whether it must be taxed as a portion of the road of the complainant, the same as any other like length of its line. The latter view is asserted by the complainant, the former by the defendants The character of this bridge, the authority to build it, and the duty to operate it, fully appear in the case of Union Pac. R. Co. v. Hall, 91 U. S. 343. It was there held that this bridge, as respects the duty of the complainant company to use and operate it. was an integral part of its line of road. The bill in this case is based upon the view that. if this bridge is part of the road, then it must be taxed as a part of the road, and not separately as a bridge. Whether this view is sound, is really the important question in the cause upon the merits.

It is to be borne in mind, that the case referred to related to the duty of the company, under the acts of congress, to operate its whole line of railway from and to its initial point in Iowa; while this case relates to the power of the state to tax the bridge. or rather to the mode of exercising that power. It might well be that the bridge is part of the road as respects the duty of continuous operation under the acts of congress, and yet, for other purposes, as, for example, the security of bridge bondholders under the act of congress of February 24th, 1871, or for purposes of taxation under the revenue laws of the state, it might be regarded as a bridge.

The power of the state to tax the property in question is settled by the case of Union Pac. R. Co. v. Peniston, 18 Wall. [85 U. S.] 5. and is not disputed by the complainant's counsel. Unless the provisions of the Iowa statute for the taxation violate some prohibition of the state constitution. or some right given to the company by the legislation of congress in its behalf. they must be sustained. The state could, undoubtedly, provide for taxing the bridge in question as part of the road of the company, valuing it no higher than other portions of the road. and distributing the taxes as it might see fit; or. in its discretion. it might provide for a separate valuation. assessment. and taxation of the bridge. if it thereby violated no paramount right of the company.

Now. what has the state done? If we look into its legislation on this subject. it seems to be uniform and unambiguous.

By the act of April 12, 1870 (Laws 13th Gen. Assem. c. 106, p. 109), railway companies, upon their railway property proper, were taxed exclusively in respect of their gross earnings; but as to their other property, the taxation was local. the same as the property of individuals (section 5). As to bridges. there was this special provision: "Sec. 6. No provision of this act shall be

held to apply to any railroad bridge across the Mississippi or Missouri rivers, but such bridges shall be assessed and taxed on the same basis as the property of individuals."

By the act of April 6th, 1872 (Laws 14th Gen. Assem. p. 29, c. 26), the mode of taxation was changed, and taxation upon valuation instead of gross receipts was adopted. This act substitutes the census board for the state treasurer in receiving the sworn statement of the railroad companies, and requires said board to make a valuation of all the property of railroad companies, except lands, lots, and other real estate not exclusively used in the operation of the roads, and excepting railroad bridges across the Mississippi and Missouri rivers, and to transmit to the board of supervisors of each county through which the road runs a statement showing the length of main track within said county, and the assessed value per mile, which shall constitute the taxable value of said property for all taxable purposes.

The 3d section declares that this "assessment shall be made upon the entire road within the state, and shall include the right of way, the road-bed, bridges, culverts, rolling stock, depots, station grounds, shops, buildings, gravel-beds, and all other property, real and personal, exclusively used in the operation of such railroad."

But section 10 declares that no provision of this act shall apply to any bridge across the Mississippi or Missouri rivers,—the same terms, precisely, as are contained in section 6 of the first act of 1870,—and affirmatively provides that such bridges shall be assessed and taxed on the same basis as the property of individuals.

The act of 1872 is substantially embodied in the Code of 1873 (sections 808, 810, 1317, 1322), in force when the tax in question was levied. Section 808 of the Code of 1873 is as follows: "Lands, lots, and other real estate belonging to any railway company, not exclusively used in the operation of the several roads, and all railway bridges across the Mississippi and Missouri rivers, shall be subject to assessment and taxation on the same basis as the property of individuals in the several counties where situated."

Section 810: "All railway property not specified in section 808 of this chapter, shall be assessed upon the assessment made by the executive council, as provided in chapter 5 of title 10, at the same rates, by the same officers, and for the same purposes as individual property under the provisions of this chapter; and all provisions of this title relating to the levy and collection of taxes, shall apply to the taxes so levied upon railway property."

It thus appears that, from the year 1870, the legislature of Iowa has made special provision for the taxation of "all railway bridges across the Mississippi and Missouri rivers,"—these, whether owned by a separate company, as in Dunlieth & D. Bridge Co.

v. Dubuque, 32 Iowa, 427, or by a railway company, as in City of Davenport v. Chicago, R. I. & P. R. Co., 38 Iowa, 633, being, under the legislation of the state, subject to municipal taxation, as respects the portions thereof within the municipality.

The taxes here in question were assessed in conformity with this view of the legislation of the state, and are valid unless this legislation conflicts with the constitution of the state, which is not claimed, or unless it is inconsistent with the acts of congress in respect to the complainant.

Where is the inconsistency? Congress has not spoken in respect to the extent or mode of taxation of this property by the states. I am unable to perceive that, because the supreme court has declared it to be the duty of the company to operate its whole line, including this bridge as part of it, that it necessarily follows that, for the purposes of taxation, the bridge cannot be separately valued and assessed.

Nor is this result inequitable or unjust to the company. Equality of burden is the desideratum of all just revenue laws; and the value of the property to be taxed (having reference to its uses and earnings) ought not to be overlooked in the legislative endeavor to meet this desideratum. Take the legislative history of this bridge. The company had authority to build it under its general charter. But the structure proved to be very expensive. Congress was applied to by the company to authorize the bridge to be separately mortgaged for $2,500,000, to raise the means to build it, and to levy and collect special rates and tolls upon freights and passengers crossing the bridge. 13 Stat. 430. This mortgage has been executed, and special tolls, much larger than the general rates of the company for the use of its road, are exacted for the use of the bridge. It is thus seen that, as respects the structure in question, complainant has and enjoys the substantial franchise of a bridge company. There is, therefore, no inherent inequity in taxing the bridge as a bridge and not as a mile, more or less, of railway, overlooking the cost, value, and authorized uses of the structure. It is my judgment that the bill be dismissed. Let a decree be entered accordingly. Bill dismissed.

An appeal was prayed and allowed.
[The records of the clerk's office of the supreme court do not show that the appeal was ever perfected.]

UNION PAC. R. Co. (SIOUX CITY & P. R. Co. v.). See Case No. 12,909.

UNION PAC. R. CO. (SMITH v.). See Case No. 13,121.

UNION PAC. R. CO. (SULLIVAN v.). See Case No. 13,599.

UNION PAC. R. CO. (THURSTON v.). See Case No. 14,019.

UNION PAC. R. CO. (TURTON v.). See Case No. 14,273.