THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PLAINTIFF IN ERROR, v. STATE BOARD OF EQUALIZATION OF TAXES, DEFENDANT IN ERROR.

Submitted July 6, 1912—Decided November 18, 1912.

On error to the Supreme Court, whose opinion is expressed in the following *per curiam:*

PER CURIAM.

This is a writ of *certiorari* sued out by the city of Hoboken directed to the board of equalization of taxes of New Jersey, the Morris and Essex Railroad Company, the Delaware, Lackawanna and Western Railroad Company, lessee, the Hoboken Ferry Company and the collector of taxes of Hoboken, removing the judgment of said board rendered on the appeal of the above ferry and railroad companies from an assessment for taxation for the year 1908, against their property located in Hoboken, known as the Lower Ferry. By the local assessment the lands were valued at $1,470,000 and the improvements at $440,000.

The return shows that upon an appeal taken by the defendants from this local assessment to the Hudson county board of taxation, the right of the local assessors to assess

the property, as well as the valuation placed thereon, were affirmed. An appeal was then prosecuted by the defendants to the board of equalization of taxes of New Jersey on the grounds, among others—

*First.* That the property taxed was second-class railroad property, the same being lands used for railroad purposes other than the main stem, and therefore not subject to local taxation, and asserting that the assessment made by the local authorities should be annulled.

*Second.* That the assessments upon all the properties enumerated should be revised and corrected.

It appeared that the entire property had been assessed by the state board of assessors as second-class railroad property and the taxes had been paid; that the assessors of the city of Hoboken had also assessed the same property, claiming that the entire property was not used for railroad purposes.

The board of equalization then held that—

"The evidence in this case shows clearly that the only part of the ferry buildings used for local purposes is the lower floor, and, from the evidence, it is also clearly apparent that this use is three-fourths local and one-fourth railroad use."

The board then rendered judgment "that the assessment of $1,470,000 on the land as assessed by the city be canceled because said land is used for railroad purposes and is not subject to assessment locally, and that the assessment of $440,-000 on said improvements be canceled, because said improvements are used for railroad purposes and not subject to assessment locally, excepting the first floor of the main ferry terminal building, which floor is used in the main for local and not railroad travel and uses; and that as to the said first floor, the assessment thereof locally is hereby fixed and apportioned at its market value of $85,000, and for said last-mentioned sum the local assessment for improvements is sustained."

From this judgment the city of Hoboken has prosecuted this writ of *certiorari.* The defendants apparently are not raising any objection to the determination of the matter.

The city contends that the determination of the board of

taxation of New Jersey is wrong, in that, while it admits that a part of the ferry terminal building is used to a definite extent locally, which is readily ascertainable, yet declares that no part of the land upon which the building is located is assessable locally, and insists that such proportionate part of the land is assessable locally as that part of the building used for local purposes and not for railroad travel or use bears to the entire building.

In other words, the insistence of the city is, that the assessment of the land, as well as of the buildings, should be apportioned and dealt with partially by the local assessors and partially by the state board of taxation.

The act of 1888 entitled "An act to revise and amend 'An act for the taxation of railroad and canal property,' approved April tenth, one thousand eight hundred and eighty-four" (*Pamph. L.* 1888, *p.* 269), provides "that all the property of any railroad or canal company not used for railroad or canal purposes shall be assessed and taxed by the same assessors, and in the same manner and at the same rate as the taxable property of other owners in the same municipal division or taxing district;" and further provides "that all property of any railroad and of any canal company used for railroad or canal purposes shall be assessed by a state board of assessors."

The distinction would seem to be that when property is used for railroad purposes, it ceases to be taxable locally; otherwise taxes upon it must be levied by the taxing authorities of the municipality in which it is situate.

This court, however, has held, *In the matter of the United New Jersey Railroad and Canal Co., 46 Vroom* 334, that the principle of exemption from local taxation must be extended so as to include such part of a ferry-house used in connection with a railroad for its terminal, as is used and is reasonably necessary to carry on such ferry for the use of passengers and freight arriving by railroad trains. That such use is for railroad purposes, but that the portion of the ferry-house mainly devoted to the accommodation of local passengers and vehicles is subject to local taxation.

This case is binding upon this court and to the extent to which it has gone, viz., as applicable to a building or buildings, it must be sustained.. But under the phraseology of the act above stated, the principles enunciated in this case should not be extended any further and will not be made applicable to the same plot of ground upon which is located a building thus jointly used for local and railroad purposes upon which an assessment has been apportioned in the above manner.

The judgment, therefore, of the board of equalization of taxes of New Jersey must be affirmed.

For the plaintiff in error, *Horace L. Allen* (*John J. Fallon* on the brief).

For the defendant in error, *William D. Edwards* (*Edwards & Smith* on the brief).

PER CURIAM.

This case was decided by the Supreme Court prior to the decision in *Lehigh Valley Railroad Co.* v. *Jersey City*, 51 *Vroom* 298. Our decision in that case justifies the result reached by the Supreme Court in the present case. It is unnecessary to decide whether that result does justice to the railroad company since they do not appeal. The judgment is affirmed, with costs.

MINTURN, J. (dissenting). The commissioners of assessment of the city of Hoboken imposed an assessment on what is called the lower ferry property in that city, containing a frontage of approximately three hundred and fifty feet on the Hudson river, upon which is erected the ferry buildings and slips, from which the ferry-boats of the Delaware, Lackawanna and Western Railroad Company ply between Hoboken and the city of New York. This ferry was operated by Col. John Stevens for the use of the general public before the advent of steam as a motive power, and thereafter under contract arrangement between its owners and the Morris and Essex railroad, ferried the passengers of the railroad in con-

junction with the general public of the state at large between the two cities. Through mesne conveyances the Delaware, Lackawanna and Western railroad took the property over in 1903. Some time thereafter the railroad returned the property, with its other buildings, to the state board of assessors, by which board it was assessed as railroad property. The city board of assessors continuing to assess it locally, the question of jurisdiction thus raised was presented to the county board of taxation, and thereafter to the state board of equalization of taxes, which latter board found as to the buildings that "it clearly appeared that this use is three-fourths local and one-fourth railroad use," and cancelled the local assessment of $440,000, and substituted upon the ratio aforesaid an assessment of $85,000. Upon review that adjudication was sustained by the Supreme Court. This judgment of affirmation is upon writ of error before us. It is unnecessary for the purpose of this review to consider the question raised by the city as to the right of the Morris and Essex Railroad Company, the lessor of the present owner, to operate a ferry under the provisions of its charter. If it be conceded that it possesses no such power, the argument still remains that the Delaware, Lackawanna and Western Railroad Company possesses the power under the nineteenth section of the General Railroad act. *Pamph. L.* 1903, *p.* 656.

And since the latter railroad company is undeniably the owner and operator of the ferries, the question of the charter powers of the former company is entirely beside the question at issue. We are relegated, therefore, to the question of the logical soundness, and legal correctness of the view of the state board of assessors in formulating this assessment, and that of the Supreme Court in affirming it. Railroad and canal property was segregated as a class from the general ratables of the state for taxation purposes solely upon the theory that there was a differentiation in use which warranted the segregation as a legislative state policy. *State Board of Assessors* v. *Central Railroad,* 19 *Vroom* 147.

The federal Supreme Court also held under similar circumstances that such a differentiation does not militate

against the constitutional requirement that property be assessed at true value under general laws and by uniform rules. *State Railroad Tax Cases*, 92 *U. S.* 575; *Kentucky Railroad Tax Case*, 115 *Id.* 321; *Pittsburg Railroad* v. *Backus*, 154 *Id.* 421.

The *ratio decidendi* in these adjudications was the peculiar use to which the property was put, for upon that theory alone could the segregation and differentiation in method of assessment be justified under the constitutional inhibition.

The Supreme Court in determining the *locus* of an assessment in controversies such as that *sub judice* has frequently emphasized this distinction.

In the case of *Camden and Atlantic Railroad Co.* v. *Atlantic City*, 29 *Vroom* 316, where the Supreme Court had under consideration the character of two distinct properties owned by the railroad company, one admittedly property impressed with a railroad use, and as such assessable by the state board, and the other a street trolley railroad assessable by the local authority, Mr. Justice Garrison said: "The electric system * * * has no such history (*i. e.*, steam railroad use), and must be judged in the light of its admitted character, irrespective of its ownership. The application of any practical test discloses the independent character of this class of property. Thus supposing the steam railroad company should sell the disputed property to a street railway company, what railroad purpose would thereupon cease to be subserved?" and it was determined that the electric plant, although owned and operated by the steam railroad, was locally assessable.

The case of *Lehigh Valley Railroad Co.* v. *Jersey City*, 51 *Vroom* 298, is clearly distinguishable from the case at bar, and serves to emphasize the rationale which should govern .in the determination of these cases. The learned Chief Justice, who had previously in his opinion recognized the distinction of use as the determining factor (*In re United Railroad and Canal Co.*, 46 *Id.* 324), again emphasizes it, in the Lehigh Valley case, by stating "the test is use for railroad purposes." Keeping in mind the distinction drawn by the Supreme Court in the Camden and Atlantic Railroad case

and the United New Jersey Railroad and Canal case, in applying this test of railroad use, can it be rationally claimed that mere ownership regardless of the extent or percentage of use shall determine the question? Is ownership in the construction of the Railroad Taxation act to be deemed the equivalent of use regardless of the extent of the use? If so, the adjudications of the Supreme Court recognizing an equality of use in the locality as a basis for local assessment are not in conformity with this principle of construction.

It is entirely conceivable that the actual railroad use may be but nominal, and the local use the substantial factor of value in the operation of a ferry plant, as in the case at bar, still under this test of mere ownership the right to assess and tax is denied to the locality, and transferred to a board organized by statute for dealing with the assessment of property assumed to be impressed with a distinct railroad use, and for that reason segregated from the other ratables of the state. Such a construction of the Railroad Tax act, in my judgment, militates against the legislative intent and the underlying philosophy of the theory upon which such legislation is based.

In the United New Jersey Railroad and Canal Company case (46 *Vroom* 324) the question presented was essentially similar to that involved in the case at bar, and the assessment was ordered to be divided between the assessors of Jersey City and the state board according to what that court found from the facts to be the percentage of use as between the patrons of the railroad and the general public using the ferry buildings, by way of the city streets.

In the case at bar the state board presumably followed that adjudication and made the division based upon use at the ratio of three-fourths to local use, and one-fourth to railroad use, but limited the application of the principle to the ferry buildings. The Supreme Court, in affirming this division and assessment, declared that under the phraseology of the act for the taxation of railroad and canal property, "the principles enunciated should not be extended any further."

This limitation in the application of the principle presents the obstacle which calls for my dissent. I am unable to perceive upon principle any reason for conceding the right of assessment of the superstructure, to the extent of three-fourths its value to the locality, and denying the right to the local board to assess the land upon which the structure stands upon the same basis of value. The concession in this case by the state board that the local use of the buildings is the major use, is essentially a concession that it is the main use. If that be the conceded fact as to the superstructure, I am unable to perceive upon what principle the use thus defined stops with the buildings, and is held not to extend to the land upon which they stand.

The method of assessment thus adopted is, in the inverse order of assessment, contrary to the usual practice, and opposed to legal principles, in that it begins with the structures and excludes the land upon which they stand, although vested in the same ownership, and devoted to the same use. The land being the principal element in the use, the assessment should be levied upon it as the fundamental factor, and carry with it as a necessary result the structures upon it to the extent of the assessment, upon the familiar principle inherent in the maxim *Quicquid plantatur solo solo cedit.* In my opinion, therefore, the city is legally entitled upon the principle of use by the locality as determined by the state board to assess the land upon which the buildings and other superstructures stand, to the extent of three-fourths in value of its area.

I am requested by Judges Bogert, Treacy and White to say that they concur in this view.

*For affirmance*—The Chancellor, Garrison, Swayze, Trenchard, Vredenburgh, Congdon, JJ.   6.

*For reversal*—Minturn, Bogert, White, Treacy, JJ.   4.