THOMAS SHERWIN *vs.* CORNELIA A. MUDGE, administratrix.

Suffolk. March 14, 1878. — Oct. 24, 1879. COLT & SOULE, JJ., absent.

By the terms of a written agreement entered into before May 1, A. "sells" and B. "buys" the stock of goods in A.'s shop; the price to be a certain percentage of the invoice price of the goods, according to an inventory in the possession of A., "subject to corrections as to quantities; delivery to be made and price paid as soon as the quantities can be verified." The agreement also stated the price according to the inventory, and the amount to be paid, "subject as above." As soon as the agreement was signed B. paid A. a certain sum. An examination was then made by B. to verify the inventory, which was not finished until after May 1, when the goods were delivered and the balance found due paid. *Held*, that the title to the goods did not pass until after May 1; and that they were properly taxable to A. on that day.

CONTRACT by the collector of the city of Boston against the administratrix of the estate of Andrew C. Mudge, deceased, for the amount of a tax assessed on May 1, 1875, on a stock of merchandise. The case was submitted to the Superior

Court, and, after judgment for the defendant, to this court on appeal, on an agreed statement of facts, in substance as follows:

Mudge died on March 20, 1875, and the defendant was duly appointed administratrix of his estate on March 22, 1875. The personal estate of Mudge at the time of his death consisted of a stock of dry goods, in a shop in Boston, leased to and occupied by him, the lease of which was cancelled on April 29, 1875. On April 28, 1875, the defendant and the firm of Jordan, Marsh & Co. entered into the following written agreement: "Boston, April 28, 1875. Cornelia A. Mudge, administratrix of the estate of Andrew C. Mudge, deceased, sells, and Jordan, Marsh & Co. buy, the stock of goods in the store at the corner of Summer Street and Washington Street, lately occupied by Andrew C. Mudge, deceased. The price is to be seventy-five per cent of the invoice prices of the goods, according to the inventory in the possession of the administratrix on thirty-five sheets of paper, subject to corrections as to quantities. Delivery to be made and price paid as soon as the quantities can be verified. The inventory price is $73,952.99, and the price to be paid is $55,464.65, subject as above." At the same time, Jordan, Marsh & Co. paid the defendant $5000. After the above agreement and payment, the clerks of Jordan, Marsh & Co. commenced the examination of the stock, in order to verify the schedules which had been made by the defendant, referred to in the agreement. Some of the clerks formerly in the employ of Mudge were present on the part of the defendant, to see that no goods were lost or carried off while the examination was being made and the schedules were being verified, and to see, if any claim for allowance or deduction was made by Jordan, Marsh & Co., that it was just. The examination and verification was made by the clerks of Jordan, Marsh & Co., and, when an error was claimed, it was examined into by the clerks of the defendant. The clerks of the defendant retained the keys of the shop until the examination and verification were complete, and until the goods were removed, on May 5 or 6, 1875, to the shop of Jordan, Marsh & Co. The goods were all in Mudge's shop on April 28, and none of them were removed either on that day or during the interval between that day and May 5 or 6. The examination was com-

pleted on May 5. The price finally arrived at as the correct one was $55,755.77. On May 5, after the examination was completed, Jordan, Marsh & Co. offered to the defendant or her duly authorized agent a check for $50,755.77, being the balance of the price finally fixed, after deducting the above payment of $5000, and, the check having been presented at the bank and pronounced good, the defendant or her agent then permitted Jordan, Marsh & Co. to remove the goods, which they thereupon did. At the time of the death of Mudge, the stock of goods was insured, and nothing was done with the policies of insurance either by way of surrender or assignment before or after the sale, and no insurance was taken upon the stock by Jordan, Marsh & Co. until after May 6. The debts of the intestate exceeded the amount for which said stock was sold, and the creditors received about seventy cents on the dollar of their claims from the proceeds of said sale, which was paid to them in the months of May and June 1875. Jordan, Marsh & Co. were assessed by the assessors of Boston a tax on their personal property for the year 1875, and said assessment was upon a basis not including the property in question.

*H. W. Putnam*, for the plaintiff.

*J. H. Young*, for the defendant.

GRAY, C. J. By a contract for the sale of specific goods, the title doubtless passes as between the parties, without any actual or constructive delivery, or payment of the price, unless it can be shown that their intention is different. *Tarling* v. *Baxter*, 6 B. & C. 360; *S. C.* 9 D. & R. 272. *Dixon* v. *Yates*, 5 B. & Ad. 313, 340; *S. C.* 2 Nev. & Man. 177, 202. *Gilmour* v. *Supple*, 11 Moore P. C. 551. *Parsons* v. *Dickinson*, 11 Pick. 352, 354. *Pratt* v. *Parkman*, 24 Pick. 42, 46. *Morse* v. *Sherman*, 106 Mass. 130. *Dempsey* v. *Gardner*, ante, 381.

But in the present case the terms of the written contract manifest the intention of the parties that the title shall not pass immediately. The implication of an immediate transfer of title, suggested by the use, at the outset, of the words in the present tense, by which the defendant " sells," and Jordan, Marsh & Co. " buy," an entire stock of goods in a particular shop, is controlled by the subsequent provisions. The contract not only requires a comparison of the actual quantities of the goods with the inven-

tory in the possession of the defendant, in order to fix the price; but the stipulation, "delivery to be made and price paid as soon as the quantities can be verified," shows that the parties contemplated and intended that the transfer of the title and the payment of the price should be simultaneous, and that both should be postponed until the quantities of the goods were verified and the amount of the purchase money thereby ascertained. *Higgins* v. *Chessman*, 9 Pick. 7, 10. *Dresser Manuf. Co.* v. *Waterston*, 3 Met. 9, 17. *Macomber* v. *Parker*, 13 Pick. 175. *Mason* v. *Thompson*, 18 Pick. 305. *Riddle* v. *Varnum*, 20 Pick. 280. *Foster* v. *Ropes*, 111 Mass. 10, 16.

The defendant, therefore, was the owner of the goods on the first of May, and is liable for the tax assessed thereon.

*Judgment for the plaintiff*