### SINGER SEWING MACHINE CO. v. COOPER, County Treasurer.

#### (District Court, S. D. Ohio, W. D.   May 12, 1919.)

#### No. 96.

1. TAXATION ⬧⟴163—FOREIGN CORPORATIONS MAY BE TAXED ON CREDITS.

   A foreign corporation, doing business in the state of Ohio, is liable to be taxed on credits.

2. EQUITY ⬧⟴65(2)—FOREIGN CORPORATION WILL NOT BE RELIEVED FROM ASSESSMENT WHERE RETURN WAS FALSE.

   Where a foreign corporation, doing business in Ohio, returned no taxable credits, though such statement was false, if a system of disposing of its goods on an installment plan passed title, the corporation will not by court of equity be granted relief against an assessment based on theory that it held title to such goods until fully paid for, for, if title passed as asserted by the corporation, it did not come into court with clean hands.

In Equity.  Bill by the Singer Sewing Machine Company, a corporation of New Jersey, against Charles C. Cooper, Treasurer of Hamilton County, Ohio.  On motion to strike.  Defendant's motion denied.

Frank V. Benton, of Newport, Ky., for complainant.

John V. Campbell and Smith Hickenlooper, both of Cincinnati, Ohio, for defendant.

HOLLISTER, District Judge.  Heard on motion to strike from answer.  The questions involved in this motion arise under lengthy allegations in the bill and answer, which may, for present purposes, be stated comparatively briefly.

Complainant deals in sewing machines, which it delivers to its customers upon the execution by them of the following paper:

"This certifies that I, ———, now residing at No. ——— street, in the ——— of ———, state of ———, have rented and received from the Singer Sewing Machine Company, Inc. (whose corporate existence for all purposes is hereby admitted), hereinafter called the Company, through its shop at ———, the sewing machine and accessories belonging thereto, described by indorsement hereon, all in good order, which I am to use with care and keep in like good order, and for the use of which I agree to pay to the company at said shop, rent in advance, as follows:

"The sum of ——— dollars cash and an old machine, for which ——— dollars has been allowed, for the first week/month; and the sum of ——— dollars cash on the ——— of each week/month thereafter, for ——— weeks/months.

"But if default shall be made in either of said payments, or if I shall sell, or offer to sell, remove, or attempt to remove, the said machine from my aforesaid residence without the written consent of the said Company, then and in that case, or at the expiration of the time for which the machine is rented, I

---

will return and deliver the same to the said Company in good order, save reasonable wear, and the said Company or its agents may resume actual possession thereof, and I hereby authorize and empower the said Company or its agents, to enter the premises wherever said machine may be, and take and carry the same away, hereby waiving any action for trespass or damages therefor and disclaiming any right of resistance thereto, and also waive all right of homestead and other exemptions under the laws of said state as against this obligation, and agree that when this lease is terminated I shall not on any ground whatever, statutory or other, be entitled to any allowance, credit, return, or set-off for payments previously made.

"Witness my hand, this ―――― day of ――――, 191―.

"Lessee's Signature: ――――――.

"Witness: ――――――.

"Accepted for Singer Sewing Machine Company, Incorporated, by ――――――.

"*Notice to the Person Signing This Lease.*—Read the terms of this lease before signing it, as no statement, settlement, agreement, or understanding, verbal or written, not contained therein, will be recognized."

The bill alleges an agreement at the same time that a monthly payment of from $1 to $2 is to be made for the purchase of the machine on the installment plan, the payment continuing until the agreed purchase price is duly paid; that the customer shall have possession of the sewing machine, and become the owner of it and retain it until the full purchase price is paid; that, in order to secure the payment of the unpaid part of the purchase price, the above paper is delivered to the complainant.

The answer avers that hearings were had before the tax commission; that the plaintiff appeared "and furnished evidence of the value of plaintiff's property subject to taxation in Hamilton county and elsewhere throughout the state of Ohio for the years in question, including the number of sewing machines sold and leased by it, the nature of said sales, and the average value of goods and merchandise owned in the various counties of said state for said years."

The complainant's position is that it is not the owner of the machines so dealt with, but that the customer is the owner, and therefore complainant should not be taxed as owner.

From these allegations and averments the conclusion must be that the taxing authorities had before them "the nature of such sales" as described in the bill. Cases almost innumerable have been cited and considered, in all of which it has been held that, notwithstanding the written paper between the parties, all the facts may be considered, in order to determine their real purpose and intention; but in only two was such a "lease" involved as the paper above set forth. In most of them the legal title was retained by the seller, and the conclusion was that the transaction was a conditional sale.

It will serve no useful purpose to discuss the many cases at length, but in Singer Mfg. Co. v. Smith, 40 S. C. 529, 19 S. E. 132, 42 Am. St. Rep. 897, the so-called "lease" was identical with that under consideration, excepting that the blanks were filled out, and it was stated that the machine was valued at $55. It was held that the transaction was a sale with a mortgage back to secure the balance of purchase money.

In Singer Sewing Machine Co. v. Holcomb, 40 Iowa, 33, the agreement on its face was a lease between the company, as the first part,

and the purchaser, as party of the second part, with no reservation of title; but it was held that parol evidence was admissible to show that, upon compliance with the conditions of the lease, the title vested in the lessee, but, under the Conditional Sales Act of Iowa, was invalid, because not recorded as against a creditor of the lessee.

These leases are not recorded, and no doubt the transactions would be considered to be conditional sales under the Ohio Conditional Sales Act (Code 1910, § 8568); but we are only considering the rights of the parties as between themselves, for the purpose of determining the issue between the lessor and the taxgatherer. Together with the other information before the taxing authorities, as alleged in the bill and averred in the answer, was the statement made to them by plaintiff in its returns for each of the several years in question: "Taxable credits, 0."

If, indeed, the title passed on the delivery of goods, and the customer became the owner, and the lease a mortgage back to secure the payment of unpaid purchase money, then these returns of no credits were false. The representation, of course, was that the machines were all paid for, and the necessary inference is that the customers were the owners. On such a showing, with the other facts alleged and averred, the taxing authorities had no right to tax complainant as the owner. If the customer is the owner, and the seller the mortgagee, the customer is at all times indebted to the seller for the balance of purchase money unpaid on tax-listing day, and the complainant must pay taxes, either on the machine as the owner, or as creditor of the customer.

[1] By what amounts to a fraud by the complainant in the transactions between itself and the taxing authorities, the complainant seeks to escape taxation altogether. The complainant, although a foreign corporation, is nevertheless taxable on credits. Hubbard v. Brush, 61 Ohio St. 252, 55 N. E. 829; Walker v. Jack, 88 Fed. 576, 31 C. C. A. 462; Western Assur. Co. v. Halliday, 126 Fed. 257, 262, et seq., 61 C. C. A. 271. These credits are taxable in Ohio; the complainant has made no return of them, has falsified with respect to them, and they amounted to a large sum for the years in question, much more, even, than appears as the value of the machines. The complainant is actually seeking the aid of a court of equity to assist it in escaping taxation altogether.

[2] In State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663, the suit was to restrain the collection of taxes assessed on certain railroads. One of the questions was that a part of the taxes were unjustly levied. Mr. Justice Miller, speaking of complainants, said (92 U. S. 617 [23 L. Ed. 663]):

"They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted."

And in Bank v. Kimball, 103 U. S. 732, 733 (26 L. Ed. 469), he said:

"That no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess

of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; * * * but that before he asks this exact and scrupulous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder."

And it was said by Judge Welch in Frazer v. Siebern, 16 Ohio St. 614, 624:

"It by no means follows, however, that the plaintiffs are entitled to an unconditional injunction against the collection of the tax. They ask equity, and must do equity. They invoke the exercise of an extraordinary power of the court for their relief, and the court in its discretion should refuse that relief, except upon conditions that are equitable and just."

It is realized that these cases—and there are others—are not exactly in point, for the reason that in them the claim was made that the taxes on property of a certain class were excessive, though admittedly something was due. But they are illustrative of the attitude of courts of equity toward those seeking their aid against unjust levy of taxes, who do not themselves pay what is justly payable by them.

Complainant argues that a court of equity has no power to levy a tax on it for these credits, and that the only power to make an assessment is in the taxing authorities. It is true the court has no such power, and cannot make an equitable levy; but it is within the power of a court of equity to deny relief to a complainant who comes into court with a demand unconscionable under the circumstances.

Since the credits arise out of the same transaction, and since the representation made as to them was false, it is now held that the wrongdoing is so nearly connected with the subject of the suit as to warrant the application of the doctrine of "unclean hands."

The motion to strike out will be overruled.