SINGER SEWING MACH. CO. v. COOPER, County Treasurer.

(District Court, S. D. Ohio, W. D. March 11, 1920.)

No. 96.

1. TAXATION ⬤608(2)—JURISDICTION OF EQUITY TO ENJOIN COLLECTION OF ILLEGAL TAX.

Equity *held* to have jurisdiction of a suit to enjoin collection of alleged illegal taxes, where complainant had no right of appeal under the statute from the order imposing such tax.

2. TAXATION ⬤79—PROPERTY DELIVERED ON CONDITIONAL SALE CONTRACTS NOT TAXABLE TO SELLER.

Where the method of business of a sewing machine company was to lease its machines by instruments containing no reference to purchase, but the real agreement was that on payment of rental for the term the machine should be the property of the lessee, such transactions were in fact conditional sales, and where such sales, unrecorded, were void under state law against creditors and bona fide purchasers, the lessees became owners as against every one, except the company, and under Gen. Code Ohio, §§ 5369–5372, the machines were taxable to them, and not to the company.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TAXATION ⌒608(3)—ENFORCEMENT OF PENALTY, IN PART LEGAL, WILL NOT BE ENJOINED.

A penalty for delinquency, imposed on a reassessment, which was in part illegal, cannot be legally enforced; but, where the reassessment was made necessary by false returns by the taxpayer, a court of equity will not grant relief by injunction against enforcement of the penalty on that part of the reassessment which was valid.

4. TAXATION ⌒610—RIGHT TO ENJOIN ILLEGAL TAX.

A court of equity will enjoin enforcement of taxes, which are excessive, as including property not legally taxable to complainant, and penalties thereon, only on condition that complainant pay the taxes and penalties legally due.

In Equity. Suit by the Singer Sewing Machine Company against Charles C. Cooper, Treasurer of Hamilton County, Ohio. Conditional decree for complainant.

See, also, 261 Fed. 635.

Frank V. Benton, of Newport, Ky., for plaintiff.

Louis H. Capelle, Pros. Atty., and S. C. Roettinger, Asst. Pros. Atty., both of Cincinnati, Ohio, for defendant.

PECK, District Judge. This case has been heretofore heard upon a motion to strike from the answer the averment which, in effect, charges the complainant with failing to return its credits for taxation. The materiality of the averments thus sought to be stricken out was necessarily tested by assuming their truth, and the conclusion of the court then reached is that stated in its former opinion. 261 Fed. 635. But upon final hearing the defendant failed to offer evidence to establish those averments, and the case is now considered upon its merits.

This is an action to enjoin the treasurer of Hamilton county, Ohio, from collecting taxes and penalties assessed against the plaintiff as the owner of sewing machines in the hands of its customers under contracts in the form of an unconditional lease. The taxes were assessed by the county auditor upon the sole evidence of an order from the tax commission of Ohio directing the plaintiff's tax return to be so corrected for the years 1911 to 1915, both inclusive. The answer denies the illegality of the assessment, and asserts that the plaintiff has an adequate remedy at law by appeal to the county board of revision, and also that plaintiff has not paid or tendered the penalty due upon certain other taxes of chattels concerning which the plaintiff's original return was false.

The sewing machines apparently leased were in fact sold; the intention of both vendor and vendee being that the vendee's title should become absolute on payment of the so-called rent in full. At the time of the making of the sale a written instrument (set forth in the former opinion) in the form of a lease was executed, whereby the plaintiff appeared to let the machine to the customer for a payment down and stipulated weekly or monthly payments for a stated period, with the usual provisions for retaking it upon default, and one waiving the return of payments should it be so retaken. No privilege of purchase

whatever, nor provision for transfer of title upon completion of the payments, was stated; but, on the contrary, it was provided that at the expiration of the term the lessee would return the machine in good order. There is no suggestion of a sale, present or future, in the instrument; it simply discloses in concise terms a bailment for hire for a limited period.

From the evidence offered at the trial it further appeared that this form was invariably signed in duplicate by the customer and transmitted to plaintiff, which returned one copy, signed by it, in an envelope upon which were stated certain discount terms, viz.: For payment in one month, 20 per cent.; in two months, 15 per cent.; and for regular payments at $5 per month, 10 per cent. As a matter of fact, if the payments were all made, the vendees kept the machines; if not paid, the machines would be retaken. In such cases they were usually voluntarily surrendered by the purchaser after one or two small payments. If several payments had been made before default, and voluntary surrender was refused, some small sum was usually allowed the purchaser, in compromise, upon the return of the machine. Occasionally the plaintiff took out a writ of replevin, on oath that it was the owner. The machines returned in all amounted to about 35 per cent. of those sold, or 700 or 800 per annum. The salesman received a selling commission of 25 per cent.

The plaintiff had listed for taxation personal property amounting to about $12,000 for the years 1911, 1912, and 1913, and about $27,000 for the years 1914 and 1915. It is now admitted by plaintiff that the true value of its merchandise and other property undisputedly subject to tax for those years was about $38,300 in 1911, $28,800 in 1912, $39,700 in 1913, $50,900 in 1914, and $41,000 in 1915, apart from the unpaid accounts due for machines sold. Thus the said undisputed assets so returned during this period were grossly undervalued.

On December 30, 1915, the tax commission of Ohio, without notice to plaintiff, ordered the county auditor to correct these returns by increasing the same to $629,500 for each of these years, and he did so. Thereupon the plaintiff took an appeal from the action of the auditor to the tax commission, bringing the matter again before that body. A hearing was had, and evidence introduced showing to the tax commission the method of sale above described. It also showed in addition to the value of the undisputed assets above set forth, the value of plaintiff's accounts or credits due from customers. These were estimated at 50 per cent. of their face, in consideration of the expense of selling and collecting, and losses. Thus valued, they were slightly exceeded by the debits reported, and consequently no net credits subject to tax were shown.

The question argued to the commission was whether the machines outstanding and unpaid for on tax listing day, or the credits arising from such sales, constituted the taxable personal property of the plaintiff. It held that the plaintiff was the owner of the machines, and accordingly made an order directing the county auditor to correct plaintiff's returns, after due notice to it, by adding thereto, for each of the

years stated, a sum which was (a) the increased value of the admitted assets previously undervalued, as hereinabove set forth and of which no complaint is now made, plus (b) the value of machines sold and delivered and not fully paid for on the respective tax listing days of the said years. The average of these latter items was about $155,000. The machines were sold at $60, and valued by the commission at $25, each. The auditor was also directed to add the statutory penalty of 50 per cent. He complied with the orders of the commission, and delivered his tax list so corrected to the defendant treasurer of the county for collection. The plaintiff offered to pay, and tendered, the additional tax due upon the increased value of the admitted assets, but not the penalty thereon, and brings this action to enjoin collection of the tax on the valuation of machines and the penalty on both items.

[1] Equity jurisdiction attaches under the facts stated. Gen. Code of Ohio, § 12075; Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903; Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498; Rockfeller v. O'Brien (D. C.) 224 Fed. 541. The plaintiff had no right of appeal to the board of revision, as the orders of the tax commission are not reviewable by that body. Section 5598, General Code (Supp.); 106 Ohio Laws 246, § 45 (in force January 1, 1916).

[2] It is clear that the written instrument did not fully express the transaction, and that it was intended to be a conditional sale, the title to be reserved in the plaintiff until, and to pass to the purchaser upon, final payment. Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Unitype Co. v. Long, 143 Fed. 315, 74 C. C. A. 453; Cowan v. Singer Sewing Machine Co., 92 Tenn. 376, 21 S. W. 663; Singer Mfg. Co. v. Gray, 121 N. C. 168, 28 S. E. 257. It follows that the title retained by the plaintiff was a mere "security title" (In re Bettman-Johnson Co., 250 Fed. 657, 664, 163 C. C. A. 3; In re National Cash Register Co., 174 Fed. 579, 98 C. C. A. 425), and that such title or lien, unrecorded, would be void as against bona fide purchasers and creditors (section 8568, Gen. Code Ohio; Jones v. Molster, 11 Ohio Cir. Ct. R. 432; Oaks v. Singer Sewing Machine Co., 17 Ga. App. 517, 87 S. E. 719). It also follows that the purchaser acquired an interest in the chattel, and that this interest was, as against all the world except the vendor, ownership. Albright v. Meredith, 58 Ohio St. 194, 50 N. E. 719; Register Co. v. Cervone, 76 Ohio St. 12, 80 N. E. 1033.

The cases of Singer Mfg. Co. v. County Com'rs, 139 Mass. 266, 1 N. E. 419, and Ricker v. Trust Co., 140 Mass. 349, 5 N. E. 284, holding chattels thus sold taxable to the vendor, appear to proceed upon interpretations of the terms "stock in trade" and "property employed in the business," as used in the statutes of that state. Robertson v. Puffer Mfg. Co., 112 Miss. 890, 73 South. 804, holding likewise, treats the transaction as a lease in fact, as well as in form. The present action is not analogous to State Trust Co. v. Chehalis County, 79 Fed. 282, 24 C. C. A. 584, where it was held that, in an action concerning the validity of a tax sale of steel rails, the recorded title, in the absence of actual knowledge by the assessing officer, controlled. In the

instant case it does not appear, and may not be assumed, that the "leases" were recorded; it does appear from a stipulation offered in evidence that the tax commission was advised that the plaintiff was in the business of selling the machines, and that its method was by taking the instruments in question. Nor can this case be determined by those decisions regarding real estate assessments to the holders of the legal and record title thereof. Tracy v. Reed (C. C.) 38 Fed. 69, 2 L. R. A. 773. Sherwin v. Mudge, 127 Mass. 547, was a case of incomplete sale; no title of any sort having passed to the vendee pending the verification of the quantities of the goods sold and the ascertainment of the price.

It must therefore be concluded, upon looking through these transactions to their real character, in the light of the evidence before the tax commission at the time of the assessment complained of, and before the court, that by sections 5369 to 5372, inclusive, General Code of Ohio, the sewing machines in question were required to be listed by the purchasers as the owners thereof, and that the balances of the purchase price unpaid on tax listing day were assessable against the vendor. Thus each was required to pay upon what he had; the vendee upon the machine in his possession and under his control and use, notwithstanding that his title might be defeated, and the vendor upon the credit owned by it.

The bill alleges, as ground for avoiding the penalty upon the increased assessment of the admitted assets, that its agents acted in good faith, believing they were listing at taxable value all taxable property in the county, without knowing the value thereof as carried on the books of the plaintiff kept at its office in New York City. But no evidence is offered to sustain this excuse. In view of the great discrepancy between the amount of the original return and the actual value of the said undisputed assets as now admitted, and in view of the fact that the latter was the book value thereof shown by plaintiff's own records, and which, therefore, was or should have been available to plaintiff's agents charged with the duty of making the tax return, the court finds that such returns were false. Ohio Farmers' Insurance Co. v. Hard, 59 Ohio St. 248, 52 N. E. 635.

[3] The penalty was upon the entire reassessment made by the auditor, including the value of the machines, as well as in the increase in valuation of the admitted assets. The penalty being illegal in the former part, the remainder of it could not have been legally enforced. Michigan Central R. R. Co. v. Slack, Holmes, 231, Fed. Cas. No. 9527; 2 Cooley on Taxation, 912; Wheeling & Lake Erie Ry. Co. v. Stewart, 13 Ohio Cir. Ct. R. 359. While a tender of so much of the tax as is legally due is a necessary prerequisite to the bringing of a bill to enjoin the illegal portion (State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663), a tender of the penalty, under the circumstances of this case, was not such a condition precedent. It does not, however, follow that the plaintiff is entitled to an injunction against such penalty upon the tax on the admitted assets. That penalty was the result of its own misstatements, either made in reckless disregard of the truth or de-

liberately false, and is no more than the county auditor should have assessed upon that portion of the tax; and, with regard thereto, plaintiff must be refused equitable relief.

It is alleged by the answer that certain debits arising from the plaintiff's Ohio business, as shown by its report to the Ohio tax commission, were improperly claimed for the purpose of offsetting its otherwise taxable credits. The allegation is that said debits were from the Singer Sewing Machine Company to the Singer Manufacturing Company, and that the former was the mere agent of the latter, and that, having by this artifice offset its taxable assets, plaintiff should not be allowed to have the assistance of a court of equity. This allegation was the subject of the motion to strike, considered in the former opinion of the court, and for the purpose of the motion the truth thereof was admitted, but upon final hearing it was not sustained by evidence.

While it is apparent, from the documents filed before the tax commission, copies of which are appended to the stipulation offered in evidence, that the relationship between these two corporations is close, the defendant has offered no further evidence upon this point, and the court is unable to find an identity of ownership of the two corporations, or that the one was the agent of the other.

It does appear, however, that the plaintiff reported its credits resulting from the installment sales of sewing machines as worth 50 per cent. of their face value. Justification of this large depreciation is attempted by the affidavits of Turck and Stedman, attached to the stipulation, on the ground that the agents received a commission of 25 per cent. for selling the machines, and that there were, in addition, expenses of collection, discounts, and losses. It is obvious that the plaintiff was not entitled to set off the cost of selling against the credits resulting from the sales. The cost of collection and other losses were proper to be taken into account. In the view taken by the tax commission, the machines themselves being taxable as leased property, the installments unpaid became nonaccrued rent, and therefore not taxable as credits; but in the view urged by the plaintiff and adopted by the court the reverse is the case. Therefore the credits should have been returned at 75 per cent., instead of 50 per cent., of their face value; and, the debits having been deducted, the net credits were subject to tax.

[4] One, to have equity, must do equity. The injunction will be granted only upon terms that plaintiff first pay for the years in question the taxes assessed upon the admitted value of the undisputed assets, together with a sum equal to the penalty thereon, also the tax upon the net credits, calculated as above, with interest on all items, and the costs of this suit. Chicago Union Traction Co. v. State Board of Equalization (C. C.) 114 Fed. 557, 566, 567, affirmed Raymond, Treasurer, v. Chicago Union Traction Co., 207 U. S. 20, 29, 38, 28 Sup. Ct. 7, 53 L. Ed. 78, 12 Ann. Cas. 757; Wead v. Omaha, 73 Neb. 321, 102 N. W. 675; Frazer v. Siebern, 16 Ohio St. 614, 624; C., B. & Q. R. R. Co. v. Board of Commissioners, 67 Fed. 413, 14 C. C. A. 458; Tisdale v. Auditor General, 85 Mich. 261, 48 N. W. 568.

A preliminary decree may be so taken, and upon compliance with these terms and conditions within 30 days plaintiff may have a decree perpetually enjoining the collection of so much of the tax and penalty as was assessed upon the value of the machines; otherwise, the bill will be dismissed.