Taft, C. J.
Both parties recognize that any tax on tangible personal property can be levied only against the owner (Section 5711.01(B), Revised Code); and that the vendee in possession under a conditional sales contract who is not in default is such an owner. See Estrich, Installment Sales (1926), 470; Singer Sewing Mach. Co. v. Cooper, Treas. (D. C. Ohio, 1920), 263 F., 994; annotation 116 A. L. R., 325.
Certainly, under such an agreement, the vendor would never have any right either to possession or control of the property conditionally sold as long as the vendee fully performed *352 his obligations thereunder. In such an instance, the vendee in possession of and using the property in the conduct of his business would be the equitable owner thereof. National Cash Register Co. v. Cervone (1907), 76 Ohio St., 12, 80 N. E., 1033; Albright v. Meredith (1898), 58 Ohio St., 194, 50 N. E., 719.
Since it has not been argued, we will not consider whether any tax on tangible personal property used by a lessee thereof in the business of the lessee should be levied only against such lessee rather than against the lessor of such property.
As we view it therefore, the only question to be determined is whether the 1958 agreement, made by the taxpayers with respect to the property taxed, was a conditional sale of that property. If it was, then the decision of the Board of Tax Appeals would admittedly be unreasonable and unlawful and must be reversed.
Where, as here, a so-called lessee is obligated to accept and pay for personal property at some future time and has no option to return it, the transaction is held to be a conditional sale even though terms commonly used in leases have been used. As stated in 47 American Jurisprudence, 23, Section 836:
“The test most frequently applied is whether the so-called ‘lessee’ is obligated to accept and pay for the property at some future time, or, on the other hand, whether his primary obligation is to return or account for the property to the so-called ‘lessor’ according to the terms of the ‘lease’.” See annotation, 175 A. L. R., 1366, 1384.
An agreement may amount to a conditional sale of personal property even though such agreement states that it is a lease and purports to lease that personal property. Actually, our statutes in effect at the time of this transaction specifically recognized this.
Thus, the applicable statutes with regard to conditional sales expressly stated that “when personal property * * * is leased * * * to another on condition that it will belong to the person * * * leasing * * * it, when the amount paid is a certain sum * # * the title to it to remain in the * * * lessor * * * until such sum # * * has been paid.” See Section 1319.11, Revised Code (as effective until July 1, 1962). See also Section 1301.01 (KK), Revised Code, defining “security interest” and stating *353 that “(b) an agreement that upon compliance with the terms of the lease the lessee shall become * * * the owner of the property for no additional consideration * * * does make the lease one intended for security,” and comment one under Section 1309.01, Revised Code, indicating substitution in the Uniform Commercial Code (effective July 1, 1962) of term “security agreement” (i. e., one creating or providing for “security interest”) for conditional sale.
In order to avoid the apparent applicability of these words to the so-called lease of the property sought to be taxed in the instant case, the Tax Commissioner contends that these words do not describe the so-called lease of the equipment and chattels in the instant case because the amount to be paid thereunder for the equipment and chattels is not “a certain sum.” In support of this argument, it is pointed out that part of the $90,000 for the original five-year term would be payment for use of the real estate, so it would be impossible to determine how much of the $90,000 was to be payment for the equipment and chattels. However, it is certain that the lessees were obligated to pay $90,000 at the rate of $1,500 a month for five years, and that, at the end of those five years, they were obligated to pay $20,000 for -the equipment and chattels; and that the taxpayers would then be obligated to convey to the lessees title to the equipment and chattels.
Under our statute, “the amount paid” is the amount paid under the “lease”; and, if a lease, which gives the lessee possession of real and personal property, specifically provides for transfer of title to the personal property to the lessee on payment of “a certain sum” which the lessee is obligated thereunder to pay, such lease is a conditional sale of such personal property even though it is not possible to determine what part of that “certain sum” is the agreed upon price for the personal property. See 47 American Jurisprudence, 39, 50, Sections 847 and 860.
In the instant case, the $90,000, payable at $1,500 a month, plus the $20,000 payable at the end of five years, clearly represented “a certain sum” within the meaning of Section 1319.11, Revised Code.
The brief of the Tax Commissioner contains the following argument:
*354 “The appellants mortgaged the personal property here in question to the * * * bank * * * and the bank acquired the title to the property and became the owner of such property. Consequently, the agreement cannot be interpreted as a sales agreement since the appellants had no property to sell.”
This argument destroys itself. If the bank had title and was owner and the taxpayers (appellants) had nothing to sell, then the taxpayers would not be the owners, and there would be no basis whatever for levying the tax against them.
There is not even any factual foundation for such an argument. The record discloses that, before the so-called lease was executed, the taxpayers and the bank agreed upon an amendment to the mortgage note, which amendment contained an express approval by the the bank of “the leasing of the supermarket storeroom and fixtures” and provided that “$20,000, the proceeds of the sale of machinery and equipment, as provided for in the * * * lease, shall be applied on the principal” of the mortgage note.
Since the decision of the Board of Tax Appeals is both unreasonable and unlawful, it is reversed.

Decision reversed.

Zimmerman, Matthias, O’Neill, Grieeith, Herbert and Gibson, JJ., concur.